# No. 24-20136

**IN THE
UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

---

Anna Palova,
Plaintiff - Appellant
v.
United Airlines, Inc.,
Defendant - Appellee

---

**On Appeal from**
United States District Court for the Southern District of Texas
4:21-CV-3451

---

## BRIEF OF APPELLANT ANNA PALOVA

---

SUBMITTED BY:

Steven John Mitby
Debora S. Pacholder
The Hon. Henry Saad
Mitby Pacholder Johnson PLLC
1001 McKinney Street, Suite 925
Houston, Texas 77002

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th Cɪʀ. R. 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

**Appellees:**
United Airlines, Inc.

**Counsel for Appellees:**
Michelle Haydel Gehrke
Emily Paige Harbison
Brian K. Morris
Robert Alan York

**Appellants:**
Anna Palova

**Counsel for Appellants:**
Steven John Mitby
Debora S. Pacholder
The Hon. Henry Saad

*/S/ Steven John Mitby*
Attorney of record for
Appellant Anna Palova

ii

## STATEMENT REGARDING ORAL ARGUMENT

Appellant Anna Palova requests oral argument as she believes it will significantly aid the decisional process in this case.

# TABLE OF CONTENTS

**Contents** **Page(s)**

**CERTIFICATE OF INTERESTED PERSONS**.................................................... ii

**STATEMENT REGARDING ORAL ARGUMENT** ......................................... iii

**TABLE OF CONTENTS** ................................................................................ iv

**TABLE OF AUTHORITIES** ..........................................................................6

**JURISDICTIONAL STATEMENT**..................................................................10

**STATEMENT OF THE ISSUES**......................................................................10

**STATEMENT OF THE CASE**.........................................................................11

    **A.**    **Factual Background** .......................................................................11

    **B.**    **Procedural History** .......................................................................14

**SUMMARY OF THE ARGUMENT** ...............................................................16

**ARGUMENT** ...................................................................................................17

    **I.**    **Standard of Review: This Court Must Review the District Court's Summary Judgment *De Novo.*** .................................................................17

    **II.**    **The District Court Erred by Holding that the RLA Preempted Palova's Age Discrimination Claims.**.........................................................18

    **A.**    **Palova's Claims Are Not Preempted Under *Carmona.*** ....................18

    **B.**    **The District Court Misunderstood *Hawaiian Airlines.*** ......................21

    **C.**    **The District Court Ignored Case Law from the Same District Which Correctly Applied the Law**...........................................................22

    **D.**    **Ms. Palova's Discrimination Claims Are Based on Statutory Rights That Are Independent from the JCBA.**...............................................23

**III.  The District Court Erroneously Denied Palova Her Right to a Jury Trial.** ..................................................................................**26**

**IV.  The District Court Abused its Discretion by Failing to Consider the Record in its Entirety and Misconstruing Ms. Palova's Claims.** .........**27**

  **A.  The District Court Failed to Cite Ms. Palova's Disparate Treatment Allegations in Her Complaint.** .............................................**27**

  **B.  The District Court Failed to Consider the Parties' Theories of the Case Submitted the Week Before Trial Would Have Commenced.** **28**

  **C.  The District Court Failed to Consider Vital, Direct Evidence of United's Discriminatory Intent.** ..............................................**29**

  **D.  The District Court Abused its Discretion in Considering Inadmissible Evidence.** ........................................................**33**

**CONCLUSION** ..................................................................................**34**

**CERTIFICATE OF SERVICE** .........................................................**35**

**CERTIFICATE OF COMPLIANCE** ..................................................**36**

# TABLE OF AUTHORITIES

## Cases

*Alexander v. Gardner-Denver Co.*
    415 U.S. 36 (1974)……………………….…………………………………26

*Bienkowski v. Am. Airlines, Inc.*
    851 F.2d 1503 (5th Cir. 1988) ………………….………….……….……30

*Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc.*
    482 F.3d 408 (5th Cir. 2007) ……………………………………..………25

*Carmona v. Sw. Airlines Co.*
    536 F.3d 344 (5th Cir. 2008) …………………………..…...……………16-23

*Celestine v. Petroleos de Venezuella SA*
    266 F.3d 343 (5th Cir. 2001) ……………………………………….………33

*Consol. Rail Corp. v. Ry. Labor Executives' Ass'n*
    491 U.S. 299 (1989) …………………………………………..…………18

*Dimick v. Schiedt*
    293 U. S. 474 (1935) …………………………………………….………27

*E.E.O.C. v. Manville Sales Corp.*
    27 F.3d 1089 (5th Cir. 1994) …………………………………………32

*E.E.O.C. v. Brown & Root, Inc.*
    725 F.2d 348 (5th Cir. 1984) …………………………………...…..……16, 26

*Fabela v. Socorro Indep. Sch. Dist.*
    329 F.3d 409 (5th Cir. 2003) …………………………….………………31

*Fierros v. Tex. Dep't of Health*
    274 F.3d 187 (5th Cir. 2001) …………………………………….………31

*Finger v. United Airlines, Inc.*
    No. 4:20-CV-4205, 2021 WL 3813366
    (S.D. Tex. Aug. 26, 2021) ……………………………………...………22-23

*Furnco Constr. Corp. v. Waters*
  438 U.S. 567 (1978) ……………………………...…………………………32

*Gee v. Principi*
  289 F.3d 342 (5th Cir. 2002) …………………………………………….25

*Goudeau v. Nat'l Oilwell Varco, L.P.*
  793 F.3d 470 (5th Cir. 2015) ………………………………………..…….31

*Gray v. Sears, Roebuck & Co.*
  131 F. Supp. 2d 895 (S.D. Tex. 2001) ………………………….…...…………24

*Haun v. Ideal Indus., Inc.*
  81 F.3d 541 (5th Cir. 1996) ………………………………………..…………29

*Hawaiian Airlines, Inc. v. Norris*
  512 U.S. 246 (1994) ………………...………….…...….……………...…….18, 21, 22

*Hager v. Brinker Tex., Inc.*
  102 F.4th 692 (5th Cir. 2024) ……………………………………………….31

*In re Liljeberg Enters., Inc.*
  304 F.3d 410 (5th Cir. 2002) ………………………….……………………….29

*Jones v. Roadway Express, Inc.*
  931 F.2d 1086 (5th Cir. 1991) …………………………………...……….20

*Kennett-Murray Corp. v. Bone*
  622 F.2d 887 (5th Cir. 1980) …………………………………….…..17

*Land v. State*
  2022 WL 10224790 (Tex.App.-Hous. (14 Dist.), 2022) ……………………33

*Lowe v. Walbro LLC*
  972 F.3d 827 (6th Cir. 2020) …………………………………….……..29

*LSR Consulting, LLC v. Wells Fargo Bank, N.A.*
  835 F.3d 530 (5th Cir. 2016) ……………………………………………33

*McDonnell Douglas Corp. v. Green*
411 U.S. 792 (1973) …………………………………….…..………30-32

*McIntosh v. Partridge*
540 F.3d 315 (5th Cir. 2008) …………………………….…………………33

*McMichael v. Transocean Offshore Deepwater Drilling, Inc.*
934 F.3d 447 (5th Cir. 2019) …………………………………….………32

*Nat'l R.R. Passenger Corp. v. Morgan*
536 U.S. 101 (2002) ………………………………………..………….33

*Palasota v. Haggar Clothing Co.*
342 F.3d 569 (5th Cir. 2003) ……………………………….…………24

*Reed v. Neopost USA, Inc.*
701 F.3d 434 (5th Cir. 2012) ……………………………….…………32

*Reeves v. Sanderson Plumbing Prods. Inc.*
530 U.S. 133 (2000)……………………………………….…..…………17

*Rogers v. Bromac Title Servs., L.L.C.*
755 F.3d 347 (5th Cir. 2014) ……………………………….…………17

*Schneiter v. Carr*
2022 WL 1773484 (W.D. Wisc. June 1, 2022) ……………….……………33

*SEC v. Jarkesy*
144 S. Ct. 2117 (2024) ……………………………………...…………27

*Snapt Inc. v. Ellipse Communs. Inc.*
430 F. App'x 346 (5th Cir. 2011) ………………………………...…29

*Tiblier v. Dlabal*
743 F.3d 1004 (5th Cir. 2014) …………………………….…....….…17

*Trainmen v. Chicago R. & I.R. Co.*
353 U.S. 30 (1957) …………………………………………………18

8

*U.S. v. Alfred*
    982 F.3d 1273 (11th Cir. 2020) …………………….…………………………33

**Statutes**

*28 U.S.C. § 1291*……………………………...…………...………………...…..10

*28 U.S.C. § 1331*……………………………………….……………………10

*28 U.S.C. § 1367*……………………………………….……………………10

*29 U.S.C. § 623(a)(1)*…………………………………………...………….31

*29 U.S.C. § 626(b) and (c)*……………………………………...………10, 26

*42 U.S.C. § 2000e-5(f)(3)*……………………………………...……….…..10

*Federal Rules of Civil Procedure 56(a)* …………………….…………...17

*Tex. Lab. Code § 21*…………………………………………...…………11, 14-16

## JURISDICTIONAL STATEMENT

The district court had subject matter jurisdiction over all federal claims in this dispute under 28 U.S.C. § 1331, 42 U.S.C. § 2000e-5(f)(3), and 29 U.S.C. § 626(b) and (c). The district court had subject matter jurisdiction over all state-law claims asserted in this action under 28 U.S.C. § 1367. The district court had personal jurisdiction over Defendant because Defendant conducted business operations and has offices in the forum district.

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 because the judgment below is a final decision of a district court of the United States. The decision was a final judgment that disposed of all parties' claims. The final judgment issued on March 5, 2024. ROA.7849. Appellant timely filed this appeal on April 2, 2024. ROA.7879.

## STATEMENT OF THE ISSUES

1. Did the district court err when it determined that the Railway Labor Act preempted Appellant's federal and state law claims for age discrimination?

2. Did the district court's order violate Appellant's right to a jury trial?

3. Did the district court abuse its discretion in failing to consider direct and circumstantial evidence of Appellee's discriminatory intent?

## STATEMENT OF THE CASE

### A. Factual Background

This is an age discrimination case that arises under the The Age Discrimination in Employment Act of 1967 (ADEA) and Texas Commission on Human Rights Act (TCHRA). Appellant Anna Palova worked as a flight attendant for United Airlines in Houston, Texas from 1992 until February 28, 202[1] ROA.551.  Until the day she was terminated, Palova had a perfect attendance and performance record and had been chosen for leadership positions within the company.  ROA.3617:20-24, 3524:9-3525:9, 3685:14-3687:21.

Despite her distinguished service, United terminated Palova after twenty-eight years – allegedly based on the *first infraction of her entire career*.  ROA.569-572. Palova was terminated just as the COVID-19 pandemic – which severely impacted the airline industry – was emerging in the United States and shortly before United announced early retirement incentives to reduce staff.  ROA.5215.

The evidence was more than sufficient to allow a reasonable jury to determine that United terminated Palova based on discriminatory animus.  First, there was direct evidence of United's discriminatory intent.  The United supervisor who signed Palova's termination letter, Shannon Bustamento (Lowrey), reposted an online meme on a social media website ridiculing older flight attendants.  ROA.7506-7515,

---

[1] Ms. Palova started her career with Continental Airlines, which merged with United in 2012.

569-572.  The meme depicted a haggard, elderly woman dressed in a United flight attendant uniform handing out a bag of pretzels.  ROA.7515. The caption made fun of older flight attendants who choose to keep working late into their careers.  *Ibid*.

Besides this direct evidence, the circumstantial evidence surrounding Palova's termination strongly indicates that United's purported reasons were pretextual.  United admits that the alleged offense – a trip-trading practice known as "parking" – does not affect the safety, reliability, or timeliness of its operations.  ROA.5108, 4867:12-4868:9.  United also admits that, despite having evidence that dozens of Houston-based flight attendants engaged in the same or similar conduct, United only investigated three individuals for "parking" – all women in their late fifties or early sixties who had worked at the airline for decades.  ROA.4738:9-15, 4779:21-4780:3, 4780:16-21, 5064-5066, 5073-5074.

United also did not follow its customary progressive discipline policy, despite imposing lesser sanctions than termination for other flight attendant misconduct – such as drug and alcohol use, sexual harassment, and even physical assault – that demonstrably affects passenger safety.  ROA.569-572, 4933:23-4938:25, 4959:10-4960:2, 778-780.  In an investigation that only focused on three older, female flight attendants, that deviation from normal practice could lead a reasonable jury to infer age discrimination.

12

Furthermore, United admits that its "investigation" into trip-trading started because of anonymous complaints that younger flight attendants were engaging in prohibited practices. ROA.4969:1-4970:13, 4733:14-25. Yet the investigation in Houston quickly turned to focus on the most senior flight attendants at the base. ROA.5143-5196, 5663, 5064-5066.

United developed an internal spreadsheet that purported to "rank" flight attendants based on their trading histories. ROA.4746:9-4748:21, 3477-3483. The flight attendant's seniority was a variable used in the calculus. *Ibid.* United had no persuasive explanation for including seniority in its analysis of trip-trading when a flight attendant's years of service have no relevance to any allegation of improper trading – especially considering the catalyst to the investigation was, ironically, senior flight attendants' concerns about junior flight attendants taking their trips through a mechanism other than parking. ROA.4747:11-4749:18, 4969:1-4970:13, 4733:14-25. Appellee's additional internal documents rank flight attendants by seniority and even seniority level, with Appellant in the highest level of seniority. ROA.5143-5196.

Finally, the evidence indicates that United's "investigation" of Palova and subsequent interview were a sham. United scheduled an interview with Palova for February 20, 2020, to discuss their purported investigation. ROA.3698. United provided Palova with a lengthy printout in a tiny font size of a spreadsheet that

detailed her trip trades over several months. ROA. 4046-4698. But, instead of giving her seventy-two hours to consider the information as company policy required, United gave her the spreadsheet less than an hour before the interview. ROA.554 [¶31], 4814:4-11, 4816:19-22, 4818:13-23, 4820:17-4824:25. The spreadsheet document was illegible and in small print – so small that the United supervisor who affirmed the termination on Level 1 appeal admitted she could not read it. ROA.3774:25-3775:5, 2735-2738.

Furthermore, United was already well underway drafting Appellant's termination letter, before she could even send supplemental information vital to her investigation. ROA.5085-5086, 4700-4701. These facts strongly imply that the investigation was a pretext for age discrimination under the ADEA and under TCHRA.

## B. Procedural History

Palova filed her Original Complaint on October 20, 2021, and included claims for violation of the ADEA, TCHRA, and breach of contract. ROA.17-484. Palova's claims under the ADEA and TCHRA alleged disparate treatment. *Ibid.* On December 7, 2021, Palova filed a Partial Motion to Dismiss the breach of contract claim only, asserting RLA preemption. ROA.501-508. The district court held a Scheduling Conference on January 28, 2022, at which United conceded that the case

would involve a claim for age discrimination even if the breach of contract claim was dismissed.  ROA.3, 7895:2-11.

Palova filed her First Amended Complaint on March 12, 2022, omitting the breach of contract claim and maintaining her claims for violations of the ADEA and TCHRA.  ROA.549-1012.  The district court terminated United's Partial Motion to Dismiss as moot on May 16, 2022.  ROA.4.  On November 13, 2023, United filed its Motion for Summary Judgment and Incorporated Memorandum in Support. ROA.1081-1644.  Palova filed her Response to Appellee's Motion for Summary Judgment and Incorporated Memorandum in Support and her Motion to Strike United's Summary Judgment Evidence and Objections on December 19, 2023 and December 20, 2023.  ROA.2157-5243.

On January 3, 2024, United filed its Response to Palova's Motion to Strike Summary Judgment Evidence and Reply in Support of Motion for Summary Judgment. ROA.5283-5313.  On January 5, the district court set the case for jury trial beginning March 11, 2024.  ROA.9.  On February 27, 2024, Palova filed her Opposed Motion for Leave to Supplement the Response to United's Motion for Summary Judgment.  ROA.7448-7548.  The parties filed their Joint Proposed Pretrial Order on March 1, 2024 for trial expected to begin on March 11, 2024. ROA.7582-7724.

On March 5, 2024, three days before trial, the district court issued the Order Granting Summary Judgment, dismissing Palova's First Amended Complaint and entering Final Judgment in favor of United.  ROA.7843-7849.  That Order is the basis of Palova's appeal.

## SUMMARY OF THE ARGUMENT

Federal courts have universally held that the RLA does not preempt federal and state law discrimination claims.  The RLA preempts "minor disputes" which can be conclusively resolved by the interpretation of a collective bargaining agreement.  Discrimination claims are based on statutory rights which exist independently of any collective bargaining agreement.  The district court erred by ignoring this established body of precedent, which this Court summarized in *Carmona v. Sw. Airlines Co.*, 536 F.3d 344, 348 (5th Cir. 2008), a case which is directly analogous to this one.  Because Palova's claims are based on ADEA and TCHRA, not on the Joint Collective Bargaining Agreement, they are not preempted.

The district court's ruling denied Palova of her day in court and statutory right to a jury trial under the ADEA.  As this Court has recognized, Congress amended the ADEA in 1978 to guarantee age discrimination plaintiffs a jury trial.  *E.E.O.C. v. Brown & Root, Inc*, 725 F.2d 348, 350 (5th Cir. 1984).  The district court erroneously deprived Palova of that important right.

The district court's sweeping view of preemption is so overbroad that it would

16

swallow up federal and state anti-discrimination protection for employees in the railway and airline industries, at least whenever the employer could identify a pretextual infraction that requires some reference to a collective bargaining agreement. As a matter of policy, that would encourage employers to manufacture disciplinary violations as a pretext for discrimination – which is exactly what happened to Palova. That perverse incentive directly contravenes this Court's decision in *Carmona*.

The only way to right this wrong is to reverse and remand with instructions to allow Palova to proceed with her case in federal district court. And, because there is overwhelming evidence of discriminatory animus by United, Palova is entitled to trial by jury.

## ARGUMENT

### I. Standard of Review: This Court Must Review the District Court's Summary Judgment *De Novo.*

This Court reviews a district court's grant of summary judgment *de novo*, applying the same standard as the trial court. *Tiblier v. Dlabal*, 743 F.3d 1004, 1007 (5th Cir. 2014). Summary judgment is appropriate when there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Rogers v. Bromac Title Servs., L.L.C.*, 755 F.3d 347, 350 (5th Cir. 2014). For the reasons set forth and discussed below, the district court erred by granting summary judgment despite genuine issues of material fact and conflicting

witness testimony. *See, e.g., Kennett-Murray Corp. v. Bone*, 622 F.2d 887, 892 (5th Cir. 1980) ("[I]t is the province of the jury to assess the probative value of the evidence"). The district court's grant of summary judgment was improper and this Court should reverse.

## II.  The District Court Erred by Holding that the RLA Preempted  Palova's Age Discrimination Claims.

### A.  Palova's Claims Are Not Preempted Under *Carmona*.

The RLA's scope of preemption is narrowly tailored. Under the Supreme Court's "minor dispute" doctrine, the RLA only preempts claims where the interpretation of a collective bargaining agreement is required to conclusively resolve a dispute between an employer and an employee. *Carmona v. Sw. Airlines Co.*, 536 F.3d 344, 348 (5th Cir. 2008). "The 'distinguishing feature' of a minor dispute 'is that the dispute may be conclusively resolved by interpreting the existing [collective bargaining] agreement.'" *Id.* at 348 (quoting *Consolidated Rail Corp. v. Railway Labor Executives' Ass'n,* 491 U.S. 299, 305 (1989)).

Preempted minor disputes involve "controversies over the meaning of an existing collective bargaining agreement in a particular fact situation." *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 253 (1994) (quoting *Brotherhood of R. R. Trainmen v. Chicago R. & I. R. Co.*, 353 U.S. 30, 33, 77 (1957)). If an interpretation of the collective bargaining agreement cannot resolve the dispute, then it is not

preempted. *Carmona*, 536 F.3d at 348. That has been the law in the Fifth Circuit and throughout the United States for decades.

The district court misapplied the "minor dispute" doctrine here. The district court mistakenly assumed that this case is about the meaning of "parking" in the collective bargaining agreement. It is not. The only question is whether United selectively enforced its rule against parking as pretext to discriminate against Palova and other senior Houston flight attendants on the basis of their age. No interpretation of the collective bargaining agreement considers, much less resolves, the issue of United's discriminatory animus. Therefore, the RLA does not preempt Palova's claims.

This Court's decision in *Carmona* controls. Carmona – a male flight attendant – filed a grievance against Southwest Airlines after he was terminated for violating the airline's attendance policy. *Carmona*, 536 F.3d at 346. After his grievance was rejected, Carmona sued in federal district court for sex and disability discrimination. *Id*. The district court found Carmona's claim was preempted.

On appeal, Carmona acknowledged that it was "necessary to *refer* to the CBA, particularly Southwest's attendance rules, method for calculating attendance points, and procedures for obtaining medical and sick leave, to resolve his claims." *Carmona*, 536 F.3d at 348 (emphasis original). But Carmona asserted that "his claims create[d] no dispute over the *meaning* of any provision of the CBA" and that

"no interpretation of the CBA is required, only adjudication of the factual question whether Southwest was motivated by sex or his alleged disability." *Id*. (emphasis original).

The Fifth Circuit reversed and reinstated Carmona's claims. The Court began by noting that "for the federal courts to have subject matter jurisdiction over claims like Carmona's 'do[es] not require that the CBA be irrelevant to the dispute; either party may still use the CBA to support the credibility of its claims.'" *Id*. at 349 (quoting *Jones v. Roadway Express, Inc.,* 931 F.2d 1086, 1090 (5th Cir.1991)). The Court held that "[e]ven though a court would have to *refer to* the CBA to consider fully each of the alleged acts of disparate treatment," "Carmona's factual allegations that unexcused absences by female flight attendants went unpunished, that remarks of his supervisors regarding male employees were discriminatory, and that his chronic illnesses were the real reason he was fired, do not bring the meaning of any CBA provisions into dispute." *Id.* (emphasis original).

Because Carmona alleged that "CBA procedures were *applied* in a discriminatory manner, not that CBA procedures were fundamentally discriminatory," his claims were not preempted. *Id*. at 350 (emphasis original). The Court found that Carmona was trying to enforce a "federal statutory right" instead of seeking relief under the collective bargaining agreement. *Ibid*. For those reasons, the Court held that Carmona's claims were not preempted.

This case is directly analogous.  Here, Palova claims that United discriminated against her based on her age, which is a statutory right created by ADEA and its Texas state law equivalent.  Palova has not asserted a right under the collective bargaining agreement or asked the Court to determine the meaning of its terms.  The interpretation of the collective bargaining agreement cannot resolve Palova's claims.  Rather, the factual inquiry must focus on United's discriminatory motives and selective application of its policy – which was exactly the issue in *Carmona*.

**C.    The District Court Misunderstood *Hawaiian Airlines*.**

The Supreme Court's decision in *Hawaiian Airlines v. Norris* explains the statutory basis for the distinction drawn in *Carmona*.  In *Hawaiian Airlines*, the Court examined the "scope of federal pre-emption under the Railway Labor Act." *Hawaiian Airlines, Inc.,* 512 U.S. 246, 248 (1994).  The Court considered whether the RLA preempted an airline mechanic's state law tort claim for wrongful termination (for allegedly refusing to certify an unsafe aircraft).  *Id*.  Noting that the RLA only preempts "grievances" and not other causes of action, the Supreme Court explained that "grievances," like disputes over "the interpretation or application" of CBAs, refers to disagreements over how to give effect to the bargained-for agreement.  *Id.* at 255-56.  The use of "grievance" to refer to a claim arising out of a CBA is common in the labor-law context in general, and it has been understood in this way in the RLA context.  *Id.* at 254.  "[P]urely factual questions" about an

employee's conduct or an employer's conduct and motives – such as United's discriminatory animus and the reasons for its unequal application of its policies – do not "requir[e] a court to interpret any term of a collective-bargaining agreement." *Id.* at 261-62 (citing *Lingle v. Norge Div. of Magic Chef*, 486 U.S. 399, 407 (1988)).

The Court held that because the plaintiff's claim was based on state tort law and arose from outside the collective bargaining agreement, it was not preempted. *Id.* at 256. ("[W]e have held that the RLA's mechanism for resolving minor disputes does not pre-empt causes of action to enforce rights that are independent of the CBA.").

**D.     The District Court Ignored Case Law from the Same District Which Correctly Applied the Law.**

Finally, the district court's ruling directly contradicts recent precedent from the Southern District of Texas, which correctly applied *Carmona* and *Hawaiian Airlines* to a flight attendant's federal and state law age discrimination claim under United's own collective bargaining agreement. *Finger v. United Airlines, Inc.*, No. 4:20-CV-4205, 2021 WL 3813366, at *3 (S.D. Tex. Aug. 26, 2021). In *Finger*, United terminated a flight attendant for violating the airline's return-to-work requirements.

Even though Finger conceded that United had the right to terminate her under the collective bargaining agreement, Finger alleged that United did not apply the same return-to-work requirements to younger, able-bodied flight attendants. *Id.*

"Just as Carmona did, Finger alleges that the 'CBA procedures were *applied* in a discriminatory manner, not that CBA procedures were fundamentally discriminatory.'" *Id*. (quoting *Carmona*, 536 F.3d at 349). In addition, the court noted that Finger "sued to enforce only federal and state statutory rights" as opposed to "contractual rights under the CBA." *Id*. For those reasons, the court found that Finger's federal and state law discrimination claims were not preempted.

The overwhelming weight of authority holds that Palova's age discrimination claims are not preempted. The Court cannot resolve Palova's claims by interpreting the collective bargaining agreement because her rights arise from federal and state statutes which prohibit age discrimination. For those reasons, this Court should reverse and remand Palova's claims for trial.

### E.  Palova's Discrimination Claims Are Based on Statutory Rights That Are Independent from the JCBA.

The district court's entire opinion is based on the fundamental error that Palova's claims require a determination of whether she engaged in "parking." They do not. Not only was the district court wrong, but it provided no analysis in support of that mistaken assumption either.

Palova's claims do not require any interpretation of the collective bargaining agreement. First, the sources of Palova's claims are federal and state anti-discrimination statutes which prohibit age discrimination. Her claims are based on statutory rather than contractual provisions. Her legal protections against age

discrimination originate from rights entirely independent of the collective bargaining agreement. In fact, the collective bargaining agreement does not address age discrimination at all.

Second, the elements of Palova's age discrimination claims do not require any contract interpretation whatsoever. To establish a *prima facie* case of age discrimination based on circumstantial evidence, "a plaintiff must show that (1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of discharge; and (4) he was either (i) replaced by someone outside the protected class, (ii) replaced by someone younger, or (iii) otherwise discharged because of his age." *Gray v. Sears, Roebuck & Co.,* 131 F. Supp. 2d 895, 903 (S.D. Tex. 2001) (emphasis added) (citing *Palasota v. Haggar Clothing Co.,* 342 F.3d 569, 576 (5th Cir. 2003)). None of those elements even refers to the collective bargaining agreement – much less requires the district court to interpret it.

Third, the direct and circumstantial evidence that supports Palova's claims relates to United's discriminatory intent and not the interpretation of the JCBA. That evidence includes the following facts: (a) the United supervisor who signed Palova's termination letter posted an online meme that ridiculed senior flight attendants; ROA.7506-7515 (b) United gave Palova less than an hour to review a spreadsheet which summarized the "evidence" against her, and then lied about the length of time she was actually given; ROA. 4046-4698, 554 [¶31] ROA.4814:4-11, 4816:19-22,

4818:13-23, 4820:17-4824:25 (c) United focused its investigation at IAH on three of its most senior Houston-based flight attendants when the anonymous complaints that United says triggered its investigation related to more junior employees; ROA. 4969:1-4970:13, 2785:14-25 (d) When United decided to change the scope of its investigation, the next day, its search parameters included a new field: seniority; ROA.4746:9-4748:21, 3477-3483; (e) United executives gave conflicting testimony about who initiated the investigation; ROA.4733:14-22, 4954:17-4956:7 (f) United announced early retirement incentives shortly after Palova's termination; ROA.5215 and (g) United conveniently "stopped" the investigation after terminating Palova and another flight attendant with nearly equal seniority.    ROA.4762:25-4768:19, 4922:19-4928:11.

These inconsistencies in United's conduct and explanations provide sufficient evidence of pretext.  *Gee v. Principi*, 289 F.3d 342, 347–48 (5th Cir. 2002) ("disingenuous and inconsistent" explanation for discriminatory conduct casts doubt on the proffered reason, which is sufficient to defeat summary judgment because "a factfinder may infer the ultimate fact of retaliation from the falsity of the explanation"); see *also Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc.,* 482 F.3d 408 (5th Cir. 2007) n. 11 ("[A]n employer's inconsistent explanations for its employment decisions at different times permit[ ] a jury to infer that the employer's proffered reasons are pretextual.").

25

III.     **The District Court Erroneously Denied Palova Her Right to a Jury Trial.**

In 1978, Congress amended the ADEA to guarantee plaintiffs the right to a jury trial. *E.E.O.C. v. Brown & Root, Inc*, 725 F.2d 348, 350 (5th Cir. 1984).  Under that amendment, "[a] person shall be entitled to a trial by jury of any issue of fact in any such action for recovery of amounts owing as a result of a violation of this chapter, regardless of whether equitable relief is sought by any party in such action." 29 U.S.C. § 626(c)(2).  The district court improperly denied Palova her statutory right to a jury trial under the ADEA.

In the analogous context of Title VII, the Supreme Court addressed whether a plaintiff could pursue a claim for discrimination both before an arbitration tribunal and in federal district court.[2]  *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47, 94 (1974).  Noting that "legislative enactments in this area have long evinced a general intent to accord parallel or overlapping remedies against discrimination," the Supreme Court held that a plaintiff could pursue both actions simultaneously.

"[T]he federal policy favoring arbitration of labor disputes and the federal policy against discriminatory employment practices can best be accommodated by permitting an employee to pursue fully both his remedy under the grievance-

---

[2] In the present case, United's System Board of Adjustment, a board established in accordance with the RLA to hear "minor" disputes, differs from a traditional arbitration tribunal. *See* 45 U.S.C. § 184.  United's System Board of Adjustment's decisions are final and do not afford any form of judicial review. *See* 45 U.S.C. § 181 (explicitly excluding 45 U.S.C. § 181, the RLA provision establishing the standard for judicial review).

arbitration clause of a collective-bargaining agreement and his cause of action under Title VII." 415 U.S. at 59–60. The Court even held that "the federal court should consider the employee's claim de novo." 415 U.S. at 60.

The Supreme Court recently reaffirmed the constitutional importance of the right to a jury trial in *SEC v. Jarkesy*, 144 S. Ct. 2117 (2024). "The right to trial by jury is 'of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right' has always been and 'should be scrutinized with the utmost care.'" *Jarkes*y, 144 S. Ct. 2117, 2120 (2024) (quoting *Dimick* v. *Schiedt*, 293 U. S. 474, 486 (1935)). Here, the district court denied Palova her statutory and constitutional right to a jury trial under the ADEA, confusing her age discrimination claim with a garden variety contract dispute. Therefore, this Court should reverse and remand.

## IV. The District Court Abused its Discretion by Failing to Consider the Record in its Entirety and Misconstruing Ms. Palova's Claims.

### A. The District Court Failed to Cite Ms. Palova's Disparate Treatment Allegations in Her Complaint.

Those allegations do not rely on whether Palova engaged in parking.

First, in speculating about how each party would present its case, the district court failed to consider the record in its entirety. The district court ignored vital portions of Ms. Palova's First Amended Complaint, which sets forth her claim for disparate treatment. For example:

> Based on information and belief, Defendant singled out and investigated what is labeled 'high value trips.' These trips were in all actuality international trips, trips which are held by Defendant's Senior Flight Attendants, individuals who are compensated more than their Junior Flight Attendants counterparts.

ROA. 558.    And Defendant's act of singling out Senior Flight Attendant investigation by Defendant's Corporate Security and for alleged "parking trip" violations had a disparate impact on Plaintiff. ROA 559.

### B.    The District Court Failed to Consider the Parties' Theories of the Case Submitted the Week Before Trial Would Have Commenced.

While the district court speculates that it will be required to determine whether Palova engaged in parking, this was not a proposed jury question by either party. ROA.7638-7666, 7684-7724.    In fact, in its submission one week before the parties' trial date, United contended that any interpretation or definition of that term was predetermined -- irrespective of any evidence or testimony presented at trial.  ROA.7714.  Therefore, even from United's view, the resolution of Palova's claim would not involve an interpretation of the CBA by the fact finder.  This is consistent with the position United took at the January 2022 scheduling conference wherein United's counsel represented that the case would involve an age discrimination claim even if the breach of contract claim was dropped. ROA.3, 7895:2-11

### C.     The District Court Failed to Consider Vital, Direct Evidence of United's Discriminatory Intent.



Appellee submitted this meme as supplemental evidence to be incorporated into her response to Appellee's motion for summary judgment. The Court considers a motion for leave to supplement summary judgment evidence for an abuse of discretion. *Snapt Inc. v. Ellipse Communs. Inc*., 430 F. App'x 346, 352 (5th Cir. 2011). The meme was presented to the District Court in a manner sufficient to permit that court to rule on it. *In re Liljeberg Enters., Inc*., 304 F.3d 410, 427 n.29 (5th Cir. 2002). The meme must be viewed in the light most favorable to Appellee, the non-movant. *See Haun v. Ideal Indus., Inc*., 81 F.3d 541, 546 (5th Cir. 1996) (defendant's admission about not wanting to hire older workers); *Lowe v. Walbro LLC*, 972 F.3d 827, 833–34 (6th Cir. 2020) (recognizing that when a remark is

subject to varying interpretations, we should take the interpretation most favorable to the non-moving party at the summary judgment stage). Because the district court did not issue a ruling, the motion was implicitly denied. By failing to consider this meme as evidence, the district court deprived Palova of a substantive right and abused its discretion.

The district court failed to consider the above meme posted on a social media page of the supervisor, Shannon Bustamento (Lowrey), for United who fired Palova, as direct evidence. ROA.5064, 569-572, 7506-7515. She attended the pre-termination meetings and signed Palova's termination letter. ROA.569-572. The meme makes fun of an elderly woman with thinning hair and thick glasses donned in a flight attendant uniform similar to United's, indicating that the woman is past retirement age. ROA.7506-7515. The title of the page is "Up, Up and Away." The meme mocks "senior flight attendants" for wanting to continue working instead of retiring. ROA.7511, 7515.

Because the decision-maker's attitude toward senior flight attendants is directly relevant to the issue of discriminatory intent, the meme takes the case out of the *McDonnell Douglas* framework relied upon by the district court in ruling that the RLA preempted Palova's claims: "Because 'there will seldom be eyewitness testimony as to the employer's mental processes,' claims brought under [the ADEA] typically rely on circumstantial evidence that is evaluated under the burden-shifting

framework first articulated in *McDonnell Douglas*." *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 474 (5th Cir. 2015) (first quoting *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 141 (2000); and citing *Bienkowski v. Am. Airlines, Inc.*, 851 F.2d 1503, 1504-05 (5th Cir. 1988)); *see also* 29 U.S.C. § 623(a)(1); *see also McDonnell Douglas Corp.*, 411 U.S. 792 (1973).

Ms. Palova should have been entitled to have the jury consider this to determine United's discriminatory intent. *See Hager v. Brinker Tex., Inc.*, 102 F.4th 692 (5th Cir. 2024) (reversible error where district court failed to consider remark relating to discriminatory animus as direct evidence). In *Hager*, this Honorable Court deemed an apologetic remark by the supervisor who terminated the plaintiff was direct evidence, taking the analysis of race discrimination out of the *McDonnell Douglas* framework: "The magistrate judge should have classified the apology as direct evidence and analyzed whether [Appellant] had produced a preponderance of evidence supporting its non-discriminatory reason for [Appellee]'s treatment." *Id.* at 699 (citing *Fierros v. Tex. Dep't of Health*, 274 F.3d 187, 192 (5th Cir. 2001)); see also *Fabela v. Socorro Indep. Sch. Dist.*, 329 F.3d 409, 417 (5th Cir. 2003) (applying defendant's burden in direct evidence case at summary judgment stage).

Alternatively, it was an abuse of discretion not to consider the meme as a piece of circumstantial evidence. Remarks offered as "circumstantial evidence alongside other alleged discriminatory conduct" must satisfy a "more flexible" two-part test.

31

*Reed v. Neopost USA, Inc.*, 701 F.3d 434, 441 (5th Cir. 2012). Under this test, the plaintiff must show "(1) discriminatory animus (2) on the part of a person that is either primarily responsible for the challenged employment action or by a person with influence or leverage over the relevant decisionmaker." *Id.* (citations omitted). It is necessary for the facts allegedly supporting a claim to be evaluated in their entirety. Indeed, a *McDonnell Douglas* analysis "was never intended to be rigid, mechanized, or ritualistic. *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577 (1978).

Regardless of which analysis is undertaken, the meme creates an issue of fact as to Appellee's discriminatory animus, as it reflects a "desire to replace older employees with younger ones." *McMichael v. Transocean Offshore Deepwater Drilling, Inc.*, 934 F.3d 447, 458 (5th Cir. 2019). It is not necessary that the plaintiffs present videotapes of explicit exclamations that "we don't want old people in our company" to prove age discrimination. Evidence of vocalizations and verbalizations of the anti-age-based feelings of a supervisor can be, and often are, used to prove unlawful discrimination. *E.E.O.C. v. Manville Sales Corp.*, 27 F.3d 1089, 1093-95 (5th Cir. 1994).

Memes, such as this one, are reliable indicia of mental state. They are used as evidence even in criminal sentencing, involving a much stricter standard. *See Land v. State*, No. 14-21-00406-CR, No. 14-21-00407-CR, 2022 WL 10224790, *2

(Tex. App.—Houston [14th Dist.] Oct. 18, 2022, no pet.) (memes were evidence of hatred for non-African-Americans, overruling Rule 403 objections); *and U.S. v. Alfred*, 982 F.3d at 1282 (memes on social media page were intrinsic to charged crimes and reflected defendant's thinking even after three years of subsequent activity).  Moreover, even in the civil context, they are probative.  *See Schneiter v. Carr*, 2022 WL 1773484 at *2-3 (W.D. Wisc. June 1, 2022) (memes denigrating minorities posted on personal Facebook page justified officer's termination as he was in charge of hiring and discipline; bias reflected in the posts could be attributed to the institution).

### D.    The District Court Abused its Discretion in Considering Inadmissible Evidence.

Further, we review a district court's determination of whether evidence submitted in connection with a motion for summary judgment is competent for abuse of discretion.  *McIntosh v. Partridge*, 540 F.3d 315, 320 (5th Cir. 2008) (citing *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 357 (5th Cir. 2001), abrogated on other grounds by *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002)).  At the summary judgment stage, evidence must be "capable of being presented in a form that would be admissible in evidence." *LSR Consulting, LLC v. Wells Fargo Bank, N.A.*, 835 F.3d 530, 534 (5th Cir. 2016). United's summary judgment evidence in support of its claim that it began an investigation at IAH because of complaints was not competent.  ROA.2157-2184.

## CONCLUSION

For the reasons set forth above, Appellant respectfully requests that the district court's Order grant of summary judgment should be reversed, and that this matter be remanded to the district court for trial by jury.

Submitted By:

MITBY PACHOLDER JOHNSON PLLC

*/S/ Steven John Mitby*
Steven John Mitby
Texas State Bar No. 24037123
Email: smitby@mitbylaw.com
Debbie S. Pacholder
Texas Bar No. 00784969
Email: dpacholder@mitbylaw.com
The Hon. Henry Saad
Email: hsaad@mitbylaw.com
1001 McKinney Street, Suite 925
Houston, Texas, 77002
(713) 234-1446

*Attorney for Plaintiff-Appellant*

## CERTIFICATE OF SERVICE

I certify that on July 25, 2024, the foregoing document was served, via the Court's CM/ECF Document Filing System, upon the following registered CM/ECF users:

Michele Haydel Gehrke (mgehrke@reedsmith.com)
Emily Paige Harbison (eharbison@reedsmith.com)
Brian K. Morris (bmorris@reedsmith.com)
Robert Alan York (ayork@reedsmith.com)

Reed Smith LLP

*/S/ Steven John Mitby*
Steven John Mitby

**CERTIFICATE OF COMPLIANCE**

1.  This document complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f) and 5ᵗʰ CIR. R. 32.1:  this document contains 5,153 words.

2.  This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5), and 5ᵗʰ CIR. R. 32.1 and the type-style requirements of FED. R. APP. P. 32(a)(6) because:  this document has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 using 14-point or larger font, Times New Roman typeface for all text.

*/S/ Steven John Mitby*
Steven John Mitby
Attorney for Plaintiff-Appellant
Dated: July 25, 2024