No. 24-20136

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

ANNA PALOVA,

     Plaintiff-Appellant,

v.

UNITED AIRLINES, INCORPORATED,

     Defendant-Appellee.

On Appeal from the United States District Court
for the Southern District of Texas, No. 4:21-cv-03451
Hon. Alfred H. Bennett, United States District Judge

BRIEF OF THE EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION AS AMICUS CURIAE IN SUPPORT OF
APPELLANT AND IN FAVOR OF REVERSAL

KARLA GILBRIDE
General Counsel

JENNIFER S. GOLDSTEIN
Associate General Counsel

JAMES M. TUCKER
Attorney

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Office of General Counsel
131 M St. N.E., 5th Floor
Washington, D.C. 20507
(202) 921-2554
James.Tucker@EEOC.gov

# TABLE OF CONTENTS

Table of Authorities.........................................................................................ii

Statement of Interest ........................................................................................1

Statement of the Issue ......................................................................................2

Statement of the Case ......................................................................................2

    A. Statement of the Facts .........................................................................2

    B. District Court Decision ........................................................................5

Argument ...........................................................................................................7

    The RLA does not preclude Palova's age-discrimination claim ........7

        A. The ADEA inquiry is whether the employer acted
           "because of" an individual's age .................................................8

        B. The RLA's mandatory arbitration requirement for minor
           disputes extends only to disputes that can be conclusively
           resolved by interpreting a CBA ..................................................10

        C. Palova's age discrimination claim cannot be conclusively
           resolved by the JCBA, and therefore it is not a "minor
           dispute" precluded by the RLA .................................................16

Conclusion .......................................................................................................18

Certificate of Compliance

Certificate of Service

# TABLE OF AUTHORITIES

**Cases**                                                 **Page(s)**

*Atchison, Topeka & Santa Fe Ry. Co. v. Buell*,
  480 U.S. 557 (1987) ................................................................. 6

*Carlson v. CSX Transp., Inc.*,
  758 F.3d 819 (7th Cir. 2014) .................................................... 8

*Carmona v. Sw. Airlines Co.*,
  536 F.3d 344 (5th Cir. 2008) ............................................. *passim*

*Consol. Rail Corp. v. Ry. Labor Execs.' Ass'n*,
  491 U.S. 299 (1989) .......................................................... 11, 14

*Giles v. Nat'l R.R. Passenger Corp.*,
  59 F.4th 696 (4th Cir. 2023) ................................................... 15

*Goudeau v. Nat'l Oilwell Varco, L.P.*,
  793 F.3d 470 (5th Cir. 2015) .................................................... 9

*Gross v. FBL Fin. Servs., Inc.*,
  557 U.S. 167 (2009) ................................................................. 9

*Harrison v. Young*,
  103 F.4th 1132 (5th Cir. 2024) ................................................. 2

*Hawaiian Airlines, Inc. v. Norris*,
  512 U.S. 246 (1994) ........................................................ *passim*

*Hazen Paper Co. v. Biggins*,
  507 U.S. 604 (1993) ............................................................... 10

*Lingle v. Norge Div. of Magic Chef, Inc.*,
  486 U.S. 399 (1988) ............................................... 11, 12, 13, 14

*McAlester v. United Air Lines, Inc.*,
  851 F.2d 1249 (10th Cir. 1988) .............................................. 15

*McDonnell Douglas Corp. v. Green*,
   411 U.S. 792 (1973)......................................................................7

*Patrick v. Ridge*,
   394 F.3d 311 (5th Cir. 2004) ......................................................9

*Pittari v. Am. Eagle Airlines, Inc.*,
   468 F.3d 1056 (8th Cir. 2006) ..................................................15

*Ralph v. Lucent Techs., Inc.*,
   135 F.3d 166 (1st Cir. 1998) .....................................................15

*Reeves v. Sanderson Plumbing Prods., Inc.*,
   530 U.S. 133 (2000)................................................................9, 10

*Saridakis v. United Airlines*,
   166 F.3d 1272 (9th Cir. 1999) ..................................................15

*Squyres v. Heico Cos.*,
    782 F.3d 224 (5th Cir. 2015) .....................................................9

*Stouffer v. Union R.R. Co.*,
   85 F.4th 139 (3d Cir. 2023) ......................................................15

**Statutes**

29 U.S.C. § 185............................................................................12

Age Discrimination in Employment Act of 1967,
   29 U.S.C. §§ 621 *et seq.*............................................................1

   29 U.S.C. § 623(a)(1) .................................................................9

Americans with Disabilities Act of 1990,
   42 U.S.C. §§ 12101 *et seq.*......................................................14

Title VII of the Civil Rights Act of 1964,
   42 U.S.C. §§ 2000e *et seq.*......................................................14

Railway Labor Act,
   45 U.S.C. §§ 151 *et seq.*............................................................1

45 U.S.C. § 151a..................................................................................10

45 U.S.C. § 153....................................................................................10

**Rules & Regulations**

Fed. R. App. P. 29(a)(2)..........................................................................1

## STATEMENT OF INTEREST

Congress charged the Equal Employment Opportunity Commission ("Commission") with interpreting, administering, and enforcing the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 *et seq.* ("ADEA"). In this case, the district court concluded that the Railway Labor Act, 45 U.S.C. §§ 151 *et seq.* ("RLA"), precluded the plaintiff's ADEA discrimination claim because, in the court's view, that claim centers on the proper interpretation of a collective bargaining agreement. However, the court's ruling is contrary to Fifth Circuit precedent recognizing that the RLA generally does *not* preclude federal employment discrimination claims. Such claims typically focus on whether the employer was motivated by a discriminatory purpose, and cannot be conclusively resolved by interpreting a collective bargaining agreement. Because of the importance of this issue to the administration and enforcement of the ADEA and other federal employment discrimination statutes, the Commission respectfully offers its views to the Court. As a federal agency, the Commission is authorized to participate as amicus curiae in the courts of appeals. Fed. R. App. P. 29(a)(2).

# STATEMENT OF THE ISSUE[1]

Whether the RLA's mandatory arbitration requirement for minor disputes precludes the plaintiff's ADEA claim, where the claim cannot conclusively be resolved by interpreting the collective bargaining agreement.

## STATEMENT OF THE CASE

### A.   Statement of the Facts

Plaintiff-Appellant Anna Palova started her career as a flight attendant with Continental Airlines in 1992; she joined Defendant-Appellee United Airlines, Inc., after the two companies merged in 2010.[2]  ROA.1110-1112.  At the time of her termination, Palova was fifty-eight years old and among the most senior flight attendants United employed.  ROA.2272, 2318-2319.  Palova was well known at United, where she worked as a flight attendant, as an instructor, and in the regulatory compliance department, and she was selected to work on United's inaugural flight in 2018 between

---

[1] The Commission takes no position on any other issues in this appeal.

[2] Because this appeal arises from a grant of summary judgment to United, the Commission presents the facts in a light most favorable to Palova as nonmovant.  *See, e.g.*, *Harrison v. Young*, 103 F.4th 1132, 1135 (5th Cir. 2024) (reiterating that, when reviewing on appeal a grant of summary judgment, the Court "view[s] all facts and inferences in the light most favorable to the nonmoving party") (citation omitted).

Houston and Sydney, Australia.  ROA.2387-2388.  The union also selected

Palova to participate in the 2016 contract negotiations with United.

ROA.2388.  The union chose her because of her experience with "trip

trading," a process by which flight attendants trade "trips," or flights, with

one another.  ROA.2388.

A joint collective bargaining agreement ("JCBA") governed the terms

of Palova's employment with United.  ROA.1086, ROA.1089.  United

determined flight-attendant scheduling in part through a seniority-based

bidding process.  ROA.2229, 2232-2233.  The JCBA also permitted flight

attendants to trade their trips with other flight attendants.  ROA.574-575,

644 (JCBA sec. 7.J.1, providing that "Flight Attendants will have unlimited

trip trades with, and pickups from, open time in their Base, and unlimited

trip trades with other Flight Attendants in their Base" subject to certain

restrictions).  But the JCBA specifically prohibited flight attendants from

trading trips by placing a traded trip on another flight attendant's line to

"broker, buy, or sell it to [yet] another flight attendant"—a practice referred

to as "parking."  ROA.1594-1596; *see also* ROA.643 (JCBA sec. 7.I.19,

providing that "[t]he placement of trips on other Flight Attendant's lines to

facilitate trading ("parking") is not permitted").  Palova described the

3

prohibition on parking as, "you cannot hold open time for yourself or [an]other flight attendant by placing the trip on the other's line that—who does not intend to fly the line."  ROA.2261.

In March 2019, United issued a communication to its flight attendants that emphasized the no-parking restriction, stating that "when [United] discover[s] that [parking] is occurring, [it] will fully investigate and take appropriate action, up to and including termination."  ROA.1594-1596, 2259-2261.  United contended that it issued this communication in response to numerous complaints about violations of the no-parking rule. ROA.1594.  United later investigated and concluded that Palova and others had engaged in parking.  ROA.1138-1139.  Palova contends that her trip trades did not violate the no-parking rule, and that she was singled out and investigated by United because of her age.  ROA.554-556, 558.

The JCBA contains a progressive discipline policy, with four levels of discipline for performance-related issues such as trip parking.  ROA.2489-90.  The JCBA did not require United to terminate an employee who violated the trip-parking rule, and the parties agreed that United had discretion to decide which level of discipline to apply in such situations. ROA.1139, 2187; *see also* ROA.5340 (United's assertion in its summary

4

judgment reply, responding to Palova's argument that other employees were issued less-severe discipline for more serious misconduct, that "United is free to make its own determination as to what infractions warrant termination"). Nevertheless, United terminated Palova on February 28, 2020, ostensibly for violating the JCBA ban on parking. ROA.571.

Palova filed suit alleging, in relevant part, that United terminated her employment in violation of the ADEA. *See* ROA.549, 560-561. United moved for summary judgment, contending that the RLA precludes Palova's ADEA claim as a "minor dispute" subject to mandatory arbitration because its resolution will turn on whether Palova's trip-trading constituted contractually prohibited parking. ROA.1095-1099. Palova responded that her claim did not turn on interpretation of the JCBA, and therefore was not a "minor dispute" under the RLA, because the question before the court was whether the actual motive behind United's termination decision was age discrimination. ROA.2191-2192.

## B.  District Court Decision

The district court granted summary judgment to United, concluding that the RLA precluded Palova's ADEA claim. ROA.7843. The court began

its analysis by observing that the RLA provides "'elaborate administrative procedures for the resolution of both major and minor disputes.'" ROA.7845 (quoting *Atchison, Topeka & Santa Fe Ry. Co. v. Buell*, 480 U.S. 557, 562 (1987)). After noting that "major disputes" under the RLA are not at issue in this case, the court explained that "minor disputes" under the RLA "are those that arise 'out of grievances or out of *the interpretation* or application of agreements covering rates of pay, rules, or working conditions.'" ROA.7845-7846 (quoting *Carmona v. Sw. Airlines Co.*, 536 F.3d 344, 348 (5th Cir. 2008)). "The 'distinguishing feature' of a minor dispute 'is that the dispute may be conclusively resolved by interpreting the existing [collective bargaining] agreement,'" which means "'the dispute does not involve rights that exist independent of the CBA.'" ROA.7846 (quoting *Carmona*, 536 F.3d at 348) (citations omitted). The court added, "[f]or minor disputes, the RLA . . . precludes claims arising out of a federal statute." ROA.7846 (citing *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 259 n.6 (1994)).

The court then determined that, because Palova "assert[ed] that she was authorized by the JCBA to trade trips as she did" and further asserted that "United wrongfully labeled her proper trips as Parking," she had

"put[] interpretations of provisions of the JCBA at the center of the dispute." ROA.7847. According to the court, evaluating Palova's claim would require the court to determine whether her trip trading in fact constituted parking and therefore supported United's termination decision. ROA.7847 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801-02 (1973)). The court further stated that, assuming Palova could establish a prima facie case of age discrimination, United would assert that the JCBA's parking prohibition was the "legitimate, nondiscriminatory reason" it terminated Palova; and she would likely argue in response, as she alleged in her amended complaint, that her trip trades complied with the JCBA and United's contrary assertion is a pretext for age discrimination. ROA.7847. "At that point," the court stated, it would "be required to determine if [Palova] actually engaged in Parking, which is not within the Court's jurisdiction to do." ROA.7847. Thus, the court concluded, the RLA precluded Palova's ADEA claim. ROA.7847.

## ARGUMENT

### The RLA does not preclude Palova's age-discrimination claim.

Under Supreme Court and Fifth Circuit precedent, claims to enforce rights that are "independent" of a CBA are not subject to the RLA's

mandatory arbitration requirements, and a claim is independent if it cannot be "conclusively resolved" by interpreting the CBA. *Hawaiian Airlines,* 512 U.S. at 256; *Carmona*, 536 F.3d at 350. Under this standard, this Court has held, discrimination claims "are generally not precluded by the RLA." *Carmona*, 536 F.3d at 350 (employment discrimination case); *see also Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 833 (7th Cir. 2014) (employment discrimination case discussing "the general rule" that the RLA does not require arbitration of rights established by federal law). Discrimination claims do not typically center on interpreting a CBA but instead on whether the employer's conduct (permitted or not by the CBA) was motivated by an unlawful discriminatory purpose. Since resort to a CBA cannot conclusively resolve this central question of motivation, such cases—like Palova's ADEA suit—are not subject to RLA preclusion as "minor" disputes. The district court erred in holding otherwise.

### A. The ADEA inquiry is whether the employer acted "because of" an individual's age.

The ADEA provides that "[i]t shall be unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation,

terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1).  "[T]he ordinary meaning of the ADEA's requirement that an employer took adverse action 'because of' age is that age was the 'reason' that the employer decided to act."  *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009); *see also Squyres v. Heico Cos.*, 782 F.3d 224, 231 (5th Cir. 2015) ("[U]nder the ADEA, the employee has the burden of persuasion to establish 'that age was [a] "but-for" cause of the employer's adverse decision.'") (citations omitted).

"The ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination."  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 153 (2000); *see also Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 477 (5th Cir. 2015) (describing in ADEA suit that "the ultimate question" was "whether a jury could find that discrimination caused the termination") (citing *Reeves,* 530 U.S. at 142-43); *Patrick v. Ridge*, 394 F.3d 311, 316 (5th Cir. 2004) (recognizing in ADEA suit that "discrimination" is "the ultimate question *vel non*").  Accordingly, "[w]hen a plaintiff alleges disparate treatment, 'liability depends on whether the protected trait (under the ADEA, age) actually motivated the employer's decision.'"

9

*Reeves*, 530 U.S. at 141 (quoting *Hazen Paper Co. v. Biggins,* 507 U.S. 604, 610 (1993)).  "That is, the plaintiff's age must have 'actually played a role in [the employer's decisionmaking] process and had a determinative influence on the outcome.'"  *Id.* (citing *Hazen Paper*, 530 U.S. at 610).

**B.    The RLA's mandatory arbitration requirement for minor disputes extends only to disputes that can be conclusively resolved by interpreting a CBA.**

"The RLA, which was extended in 1936 to cover the airline industry, sets up a mandatory arbitral mechanism to handle disputes 'growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions.'"  *Hawaiian Airlines*, 512 U.S. at 248 (quoting 45 U.S.C. § 153).  To accomplish Congress's goal of promoting stability in labor-management relations, the RLA "establishes a mandatory arbitral mechanism for 'the prompt and orderly settlement' of two classes of disputes," "major" disputes and "minor" disputes.  *Id.* at 252 (citing 45 U.S.C. § 151a).  "Major" disputes concern rates of pay, rules, or working conditions, and relate to the formation of collective bargaining agreements.  *Id.*  "Minor" disputes "grow out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions," and "involve controversies over the meaning of an

existing collective bargaining agreement in a particular fact situation." *Id.* at 252-53 (cleaned up). "Thus, 'major disputes seek to create contractual rights, minor disputes to enforce them.'" *Id.* at 253 (citation omitted).

Critically, the Supreme Court has explained that "the RLA's mechanism for resolving minor disputes *does not* pre-empt causes of action to enforce rights that are *independent of the CBA*." *Id.* at 256 (emphasis added). The Court elaborated on how to ascertain independence: "the distinguishing feature of a minor dispute is that the dispute may be conclusively resolved by interpreting the existing CBA." *Id.* at 265 (cleaned up); *see also Carmona*, 536 F.3d at 348 (same) (quoting *Consol. Rail Corp. v. Ry. Labor Execs.' Ass'n*, 491 U.S. 299, 305 (1989)). "Obviously, to say that a minor dispute can be 'conclusively resolved' by interpreting the CBA is another way of saying that the dispute does not involve rights that exist independent of the CBA." *Hawaiian Airlines*, 512 U.S. at 265; *see also Carmona*, 536 F.3d at 348 (same).

The Supreme Court's decision in *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399 (1988), is instructive as to how these principles apply to claims alleging violations of statutory employment rights. In *Lingle*, the plaintiff had brought suit alleging retaliatory discharge for exercising her

rights under state worker's compensation law.  486 U.S. at 402.  The

relevant CBA contained a provision requiring "just cause" for a

termination decision, but the plaintiff's suit was based solely on statutory

protection against retaliation for filing a worker's compensation claim.  *Id.*

at 401-02.  The district court dismissed the complaint, concluding that the

plaintiff's "claim for retaliatory discharge is 'inextricably intertwined' with

the collective bargaining provision prohibiting wrongful discharge or

discharge without just cause" and as such was preempted by § 301 of the

Labor Management Relations Act, 29 U.S.C. § 185 ("LMRA").  *Id.* at 402

(citation omitted).  The court of appeals agreed.  *Id.*

In reversing the court of appeals, the Supreme Court held that the

necessary elements of the state-law claim—that the employer terminated or

threatened to terminate the employee, and that the employer's motive was

to interfere with or deter the employee from exercising her statutory

rights—involved "purely factual questions pertain[ing] to the conduct of

the employee and the conduct and motivation of the employer."  *Id.* at 407.

According to the Court, "[n]either of the elements requires a court to

interpret any term of a collective-bargaining agreement," including the

employer's showing that it had a "nonretaliatory reason for the discharge." *Id.*

Importantly, while *Lingle* recognized that "the state-law analysis might well involve attention to the same factual considerations as the contractual determination of whether Lingle was fired for just cause," the court "disagree[d] . . . that such parallelism renders the state-law analysis dependent upon the contractual analysis." *Id.* at 408. "[E]ven if dispute resolution [under the CBA or state law] would require addressing precisely the same set of facts," there is no preemption if the state-law claim "can be resolved without *interpreting* the agreement itself," which renders the claim "'independent'" of the CBA.[3] *Id.* at 409-10 (emphasis added). Moreover, the *Lingle* Court pointed to employment-discrimination law to illustrate that an overlap between contractual and statutory protections does not

---

[3] Both *Lingle* and *Hawaiian Airlines*, which expressly adopted the *Lingle* preemption standard, involved determining whether federal statutes (the LMRA and the RLA, respectively) preempted state law. *Hawaiian Airlines*, 512 U.S. at 263. While the central question in this case is about federal-law preclusion, not state-law preemption, *see Carmona*, 536 F.3d at 347 n.2 (noting the distinction between "preemption" and "preclusion"), this Court applied the *Hawaiian Airlines* standard to the preclusion question in *Carmona*, which involved federal employment-discrimination claims. *See id.* at 347-51.

render the latter "dependent upon the terms of the private contract." *Id.* at

412-13.  In such situations, the Court noted, an arbitrator's determination

that a contract term was not violated "might or might not be consistent

with a proper interpretation" of the statutory protection.  *Id.* at 413.

Similarly, this Court has held that the RLA does not preclude a claim

founded on federal employment-discrimination law.  In *Carmona*, this

Court addressed a district court's conclusion that the RLA precluded the

plaintiff's sex- and disability-discrimination claims, brought under Title VII

of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, and the Americans

with Disabilities Act of 1990, 42 U.S.C. §§ 12101 *et seq.* ("ADA"),

respectively.  *Carmona*, 536 F.3d at 346-47.  Reversing the district court, this

Court criticized the employer's argument for "fail[ing] to recognize the

distinction between reference to the CBA and reliance on it," and reiterated

the Supreme Court's recognition that "the 'distinguishing feature' of a

minor dispute under the RLA is that 'the dispute may be *conclusively*

resolved by interpreting' the CBA."  *Id.* at 349 (quoting *Consol. Rail Corp.*,

491 U.S. at 305).

In *Carmona*, the plaintiff's allegations were "that CBA procedures

were *applied* in a discriminatory manner, not that CBA procedures were

fundamentally discriminatory." *Id.* "Thus, consideration of the CBA *as applied to Title VII and the ADA*—not interpretation of the CBA itself—is what is required to resolve" his claims. *Id.* at 349-50*; see also id.* at 349 ("[P]rovisions of the CBA are relevant to, but *not* dispositive of, the resolution of Carmona's claims . . . .").  According to this Court, the fact that the plaintiff was attempting to enforce "his federal statutory rights" under employment-discrimination laws "bolsters the contention that [his] claims do not require CBA interpretation."[4]  *Id.* at 350.  The Court clarified that it was not suggesting that "the source of the rights asserted in a union member's claims determines absolutely whether his action is precluded by the RLA," but said it was "persuaded" that the plaintiff's claims alleged

---

[4] As *Carmona* observed, *id.* at 350, other circuit courts have also recognized that claims based on federal employment-discrimination statutes generally are not precluded by the RLA.  *See Stouffer v. Union R.R. Co.*, 85 F.4th 139, 144 (3d Cir. 2023); *Giles v. Nat'l R.R. Passenger Corp.*, 59 F.4th 696, 702-03 (4th Cir. 2023); *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 833 (7th Cir. 2014); *Pittari v. Am. Eagle Airlines, Inc.*, 468 F.3d 1056, 1060-61 (8th Cir. 2006); *Saridakis v. United Airlines*, 166 F.3d 1272, 1276 (9th Cir. 1999); *McAlester v. United Air Lines, Inc.*, 851 F.2d 1249, 1253 (10th Cir. 1988).  *Cf. Ralph v. Lucent Techs., Inc.*, 135 F.3d 166, 171 (1st Cir. 1998) (holding that the plaintiff's ADA-based disability discrimination claim was not "precluded" by the LMRA because the parties' "controversy concerns the plaintiff's rights under state and federal statutes which exist independently of the collective bargaining agreement and do not require interpretation of that agreement").

violations of federal employment-discrimination statutes, "as opposed to violations of the CBA itself, [which] further evidences that the instant suit does not require CBA interpretation." *Id.* at 350-51.

### C. Palova's age discrimination claim cannot be conclusively resolved by the JCBA, and therefore it is not a "minor dispute" precluded by the RLA.

The district court erred in concluding that Palova's ADEA claim is subject to RLA preclusion as a "minor" dispute. In support of her argument that United's stated rationale for her termination—her violation of the trip-parking ban—was a pretext for age discrimination, Palova both disputed the factual basis for United's assertion *and* argued that United selectively enforced the rule against her based on a discriminatory motive: her age. *See generally* ROA.2185-2211. Thus, because the central issue of Palova's ADEA claim is whether United's decision to discipline and terminate her was motivated by age discrimination, *see supra* pp. 7-10, her claim cannot be "conclusively resolved" by interpreting the CBA, and therefore the RLA does not preclude it. *Carmona*, 536 F.3d at 349-50.

In reaching a contrary conclusion, the district court reasoned that if it heard the case, United would "undoubtedly rely on the JCBA for its legitimate, nondiscriminatory reason" for terminating Palova, and she

16

would in turn dispute that assertion as pretextual.  ROA.7847.  Because

Palova disagrees with United that her trip trades constituted parking, the

court stated, she had "put[] interpretations of provisions of the JCBA at the

center of the dispute."  *Id.*

The district court misunderstood the pretext analysis.  Even if the

meaning of the JCBA definition of "parking" is part of the court's

assessment of the pretext stage of Palova's ADEA claim, the JCBA's

meaning would not end the ADEA inquiry.  Rather, the court also would

have to examine the evidence Palova produced to illuminate United's

motivation behind its decision not to apply progressive discipline to her.

*See* ROA.2187-2190, 2202-2211; *see also* ROA.5340 (United's assertion on

summary judgment that it believes it "is free to make its own

determination as to what infractions warrant termination").  Furthermore,

the court would have to examine the evidence indicating United's different

treatment of Palova as compared to similarly situated younger employees.

*See* ROA.2203-2204, 2211.  Accordingly, the JCBA provisions here "are

relevant to, but *not* dispositive of, the resolution of [Palova's] claim[]," and

so her claim "do[es] not constitute a minor dispute under the RLA."

*Carmona*, 536 F.3d at 349.  Instead, with her ADEA claim Palova seeks to

"enforce rights that are independent of the [J]CBA," and thus "the RLA's mechanism for resolving minor disputes *does not* [preclude her ADEA-based] cause[] of action." *Hawaiian Airlines*, 512 U.S. at 256 (emphasis added).

## CONCLUSION

For the foregoing reasons, the Commission respectfully requests that this Court vacate the judgment of the district court and remand the case for further proceedings.

Respectfully submitted,

KARLA GILBRIDE
General Counsel

JENNIFER S. GOLDSTEIN
Associate General Counsel

s/James M. Tucker
JAMES M. TUCKER
Attorney

EQUAL EMPLOYMENT
  OPPORTUNITY COMMISSION
Office of General Counsel
131 M St. N.E., 5th Floor
Washington, D.C. 20507
(202) 921-2554
James.Tucker@EEOC.gov

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) and 32(a)(7)(B), and Fifth Circuit Rules 29.2, 29.3, and 32.2, because it contains 3,546 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Fifth Circuit Rule 32.2.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and Fifth Circuit Rule 32.1, and the type-style requirements of Fed. R. App. P. 32(a)(6), because it has been prepared in a proportionally spaced typeface using Microsoft Word 365 in Book Antiqua 14-point font for text and footnotes.

<div style="margin-left:40%">

s/James M. Tucker
JAMES M. TUCKER
Attorney

EQUAL EMPLOYMENT
  OPPORTUNITY COMMISSION
Office of General Counsel
131 M St. N.E., 5th Floor
Washington, D.C. 20507
(202) 921-2554
James.Tucker@EEOC.gov

</div>

# CERTIFICATE OF SERVICE

I certify that on July 31, 2024, I electronically filed the foregoing brief in PDF format with the Clerk of Court via the appellate CM/ECF system.  I certify that all counsel of record are registered CM/ECF users, and service will be accomplished via the appellate CM/ECF system.

s/James M. Tucker
JAMES M. TUCKER
Attorney

EQUAL EMPLOYMENT
 OPPORTUNITY COMMISSION
Office of General Counsel
131 M St. N.E., 5th Floor
Washington, D.C. 20507
(202) 921-2554
James.Tucker@EEOC.gov