No. 24-20136

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

**ANNA PALOVA,**

*Plaintiff-Appellant*

v.

**UNITED AIRLINES, INC.,**

*Defendant-Appellee*

**On Appeal from**
**United States District Court for the Southern District of Texas**
**4:21-CV-3451**

## BRIEF FOR APPELLEE UNITED AIRLINES, INC.

| | | | |
|---|---|---|---|
| R. Alan York | Michele Haydel Gehrke | Brian K. Morris | Kristin C. Cope |
| REED SMITH LLP | REED SMITH LLP | REED SMITH LLP | O'MELVENY & |
| 1221 McKinney Street | 101 Second Street | 2850 N. Harwood | MYERS LLP |
| Suite 2100 | Suite 1800 | Street Suite 1700 | 2801 North Harwood |
| Houston, TX 77010 | San Francisco, CA 94105 | Dallas, TX 75201 | Street, Suite 1600 |
| Tel: 713.469.3800 | Tel: 415.543.8700 | Tel: 469.680.4200 | Dallas, TX 75201 |
| Fax: 713.469.3899 | Fax: 415.391.8269 | Fax: 469.680.4299 | Tel: 972.360.1900 |
| | | | Fax: 972.360.1901 |

## CERTIFICATE OF INTERESTED PARTIES

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case.  These representations are made in order so that the judges of this court may evaluate possible disqualifications or recusal.

| **Plaintiff-Appellant** | **Counsel for Plaintiff-Appellant** |
|---|---|
| Anna Palova | Steven John Mitby<br>Debbie S. Pacholder<br>MITBY PACHOLDER JOHNSON PLLC<br>1001 McKinney Street, Suite 925<br>Houston, Texas 77002<br>(713) 234-1446 |
| **Defendant-Appellee** | **Counsel for Defendant-Appellee** |
| United Airlines, Inc. | Kristin C. Cope<br><br>O'MELVENY & MYERS LLP<br>2801 North Harwood Street, Suite 1800<br>Dallas, TX 75201<br>(972) 360-1900<br><br>R. Alan York<br>REED SMITH LLP<br>1221 McKinney Street, Suite 2100<br>Houston, Texas 77010<br>(713) 469-3800<br><br>Michele Haydel Gehrke<br>REED SMITH LLP<br>101 Second Street, Suite 1800<br>San Francisco, CA 94105-3659<br>(415) 543-8700 |

Brian K. Morris
REED SMITH LLP
2501 N. Harwood Street, Suite 1700
Dallas, TX 75201
(469) 680-4200


*/s/ Kristin C. Cope*
Kristin C. Cope

## STATEMENT REGARDING ORAL ARGUMENT

Appellee United Airlines, Inc., requests oral argument because it believes argument will allow the parties to address the particular facts of this case and the applicable law in a way that will significantly assist the Court in resolving this case.

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................1

STATEMENT OF JURISDICTION..........................................................4

STANDARD OF REVIEW .....................................................................5

ISSUES PRESENTED...........................................................................6

STATEMENT OF THE CASE.................................................................6

    **I.**    Factual History ....................................................................6

        **A.**    Palova Was Subject To A Collective Bargaining
Agreement That Prohibits "Parking"...........................6

        **B.**    After Flight Attendant Complaints of Violations, United
And The Union Warn  Flight Attendants That Parking Is
Prohibited ...............................................................8

        **C.**    United Launches An Investigation Of Parking Activity
And Identifies Numerous Violators, Including Palova.............9

        **D.**    United Terminates Palova And 27 Other Flight
Attendants Across Three Bases ..............................10

    **II.**    Procedural History..............................................................11

        **A.**    Palova Initiates This Litigation, Alleging That United
Misconstrued Her Trip Trades as Parking Based On Its
Misunderstanding of the JCBA.................................11

        **B.**    The System Board Adjudicates A Similar Parking
Termination ...........................................................13

        **C.**    Palova Moves to Supplement The Summary Judgment
Record and Reopen Discovery Less Than Two Weeks
Before Trial ...........................................................14

        **D.**    The District Court Grants United's Motion for Summary
Judgment Based on RLA Preemption......................14

SUMMARY OF THE ARGUMENT .......................................................16

ARGUMENT ....................................................................................19

    **I.**    The District Court Correctly Held That The RLA Precludes
Palova's Claims..................................................................19

# TABLE OF CONTENTS

**Page**

    **A.**    The RLA Precludes Claims That Require Interpretation Of A CBA ............................................................................... 19

    **B.**    *Carmona*—and other Discrimination Cases—Confirm that the RLA Precludes Claims That Require Interpretation Of A CBA ......................................................... 22

    **C.**    Just As In *Reece*, Palova's Claims Squarely Present An Interpretive Dispute Over The JCBA, And Are Thus Preempted .................................................................................. 26

    **D.**    The RLA Precludes Claims in a Narrow Set of Discrimination Cases, Where The Purposes of Stability and Certainty Are Served. ........................................................ 29

    **E.**    The District Court's Purported Failure to Follow a Non-Binding Decision of Another District Judge Has No Legal Import .......................................................................... 30

**II.**    Palova's Right to a Jury Trial Does Not Negate RLA Preemption ...................................................................................... 31

**III.**    The District Court Properly Denied Palova's Motion to Supplement the Summary Judgment Record and Reopen Discovery to Introduce the Pinterest Meme and Additional Written Argument ............................................................................ 34

**IV.**    If the Court Concludes that the RLA Does Not Preempt Palova's Claims, It Should Remand for the District Court to Consider United's Alternative Grounds for Summary Judgment in the First Instance ................................................................... 37

CONCLUSION ...................................................................................... 39

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexander v. Gardner-Denver Co.*,
   415 U.S. 36 (1974) ................................................................................33

*Anderson v. Am. Airlines*,
   2 F.3d 590 (5th Cir. 1993) ..................................................................20

*Ard v. Rushing*,
   597 Fed. Appx. 213 (5th Cir. 2014) ......................................................5

*Arnold v. Williams*,
   979 F.3d 262 (5th Cir. 2020) ..............................................................35

*Avina v. Union Pac. R.R. Co.*,
   2022 U.S. Dist. LEXIS 118561 (W.D. Mo. May 11, 2022) .................32

*Barnett v. United Air Lines, Inc.*,
   738 F.2d 358 (10th Cir. 1984) ............................................................28

*Browning v. Kramer*,
   931 F.2d 340 (5th Cir. 1991) ..............................................................38

*Careflite v. Office & Prof'l Emples. Int'l Union*,
   766 F. Supp. 2d 773 (N.D. Tex. 2011) ........................................ 24, 25

*Carmona v. Southwest Airlines Co.*,
   536 F.3d 344 (5th Cir. 2008) ...................................................... passim

*Consol. Rail Corp. v. Ry. Labor Execs.' Ass'n*,
   491 U.S. 299 (1989) ............................................................................20

*Covalt v. Pintar*,
   2007 WL 7239321 (S.D. Tex. June 29, 2007) ....................................24

*Cox v. United Parcel Serv., Inc.*,
   2000 WL 28176 (E.D. La. Jan. 12, 2000) ...........................................25

*Crampton v. Weizenbaum*,
   757 Fed. Appx. 357 (5th Cir. 2018) ....................................................36

Finger v. United Airlines, Inc.,
   2021 U.S. Dist. LEXIS 161985 (S.D. Tex. Aug. 26, 2021) .................30

*Foster v. Ferrellgas, Inc.*,
   834 Fed. Appx. 88 (5th Cir. 2020) ......................................................35

*Frost v. Harper*,
   2001 WL 34063533 (S.D. Tex. Mar. 23, 2001) .............................. 24, 30

# TABLE OF AUTHORITIES
## (Continued)

Page(s)

*Fulford v. Lowe's Home Ctrs., LLC,*
811 Fed. Appx. 240 (5th Cir. 2020)........................................36

*Haase v. Countrywide Home Loans, Inc.,*
748 F.3d 624 (5th Cir. 2014)..................................................5

*Hawaiian Airlines, Inc. v. Norris,*
512 U.S. 246 (1994) ............................................... 3, 19, 29

*Jackson v. Consol. Rail Corp.,*
717 F.2d 1045 (7th Cir. 1983)...............................................32

*Karydas v. Hous. Grinding & Mfg. Co.,*
1998 U.S. Dist. LEXIS 21321 (S.D. Tex. June 21, 1998) ...................25

*Keelan v. Majesco Software, Inc.,*
407 F.3d 332 (5th Cir. 2005)..................................................31

*Kollar v. United Transp. Union,*
83 F.3d 124 (5th Cir. 1996).............................................4, 20

*Korndoffer v. W. States Fire Prot. Co.,*
2004 WL 2750231 (W.D. Tex. Dec. 2, 2004) ...........................24

*Loper Bright Enters. v. Raimondo,*
144 S.Ct. 2244 (2024) ...........................................................19

*Magnolia Island Plantation, L.L.C. v. Whittington,*
29 F.4th 246 (5th Cir. 2022) ..............................................38

*Man Roland, Inc. v. Kreitz Motor Exp., Inc.,*
438 F.3d 476 (5th Cir. 2006)................................................38

*McCall v. McQueen,*
962 F. Supp. 890 (E.D. La. 1997).......................................25

*Miller v. Am. Airlines, Inc.,*
525 F.3d 520 (7th Cir. 2008)................................................32

*Million v. Exxon Mobil Corp.,*
837 Fed. Appx. 263 (5th Cir. 2020)......................................36

*Mitchell v. Cont'l Airlines, Inc.,*
481 F.3d 225 (5th Cir. 2007).................................................19

*Moreno v. STP Nuclear Operating Co.,*
172 F. Supp. 2d 857 (S.D. Tex. 2001) .............................. 24, 30

# TABLE OF AUTHORITIES
## (Continued)

Page(s)

*Munoz v. Orr*,
200 F.3d 291 (5th Cir. 2000)............................................................5, 35

*Nichols v. Enterasys Networks, Inc.*,
495 F.3d 185 (5th Cir. 2007)..................................................................32

*Odell v. Kalitta Air, LLC*,
107 F.4th 523 (6th Cir. 2024) .................................................................25

Palova v. United Airlines, Inc.,
2024 U.S. Dist. LEXIS 65403 (S.D. Tex. Mar. 5, 2024)........................ 15, 16, 28

*Parham v. Carrier Corp.*,
9 F.3d 383 (5th Cir. 1993)......................................................................21

*PHI, Inc. v. Office & Prof'l Emples. Int'l Union*,
2010 U.S. Dist. LEXIS 101692 (W.D. La. Sep. 24, 2010)............................ 23, 25

*Reece v. Houston Lighting & Power Company*,
79 F.3d at 486 ........................................................................... 21, 22, 26

*Richter v. Merchs. Fast Motor Lines*,
83 F.3d 96 (5th Cir. 1996)......................................................................21

*RJ Reynolds Tobacco Co. v. FDA*,
76 F.4th 863 (5th Cir. 2024) ..................................................................38

*Rodee v. Am. Airlines, Inc.*,
Case No. 4:03-cv-01193 (dkt. no. 40) (N.D. Tex. Oct. 2, 2003).........................32

*Schiltz v. Burlington N. R.R.*,
115 F.3d 1407 (8th Cir. 1997).................................................................32

*Shepherd v. City of Shreveport*,
920 F.3d 278 (5th Cir. 2019)................................................................5, 35

*Smith v. Reg'l Transit Auth.*,
827 F.3d 412 (5th Cir. 2016)....................................................................5

*Stockman v. FEC*,
138 F.3d 144 (5th Cir. 1998)..................................................................34

*Thomas v. LTV Corp.*,
39 F.3d 611 (5th Cir. 1994)....................................................................21

*United Health Prods. v. Animal Health Int'l, Inc.*,
2021 U.S. Dist. LEXIS 46093 (S.D. Tex. Mar. 11, 2021)....................................37

## TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

*W. Fire Ins. Co. v. Copeland*,
  786 F.2d 649 (5th Cir. 1986)..................................................................38

*Weatherly v. Pershing, L.L.C.*,
  945 F.3d 915 (5th Cir. 2019)..................................................................30

*Williamson v. Tucker*,
  645 F.2d 404 (5th Cir. 1981)..................................................................34

*Woodrow v. Inland Paperboard & Packaging, Inc.*,
  2005 WL 6482749 (E.D. Tex. July 21, 2005) .....................................24

**Statutes**

28 U.S.C. § 1291 ........................................................................................4

45 U.S.C. § 184 ....................................................................................8, 20

**Rules**

Fed. R. Civ. P. 16(b)(4).............................................................................35

# INTRODUCTION

Anna Palova ("Palova" or "Appellant") is a former union-represented flight attendant for United Airlines, Inc. ("United"). While employed by United, Palova was subject to a joint collective bargaining agreement (the "JCBA") between the Association of Flight Attendants ("Union") and United. The JCBA permitted flight attendants to freely trade their assigned trips with other flight attendants—but prohibited the act of "parking," a practice whereby flight attendants would place trips on another flight attendant's schedule (preventing the trip from being picked up by someone else) in order to hoard flights they never intended to fly, and to facilitate trades with other flight attendants. A flight attendant's motivation for parking is irrelevant in the eyes of the JCBA; the act of parking itself is expressly prohibited.

In 2019, United and the Union received complaints from numerous flight attendants that their colleagues were engaged in parking. The impermissible parking detrimentally impacted other flight attendants, with the most significant impact often being on more senior flight attendants who would otherwise have had access to more preferred trips in the absence of the parking manipulations. Given the many complaints, United and the Union determined it was necessary to take action on the issue. To that end, both United and the Union put flight attendants on notice that

engaging in the act of parking would result in investigation of the conduct and discipline up to and including termination of employment.

Following that notice, United reviewed flight data across three of its hubs—Houston, Newark, and San Francisco—as part of a multi-base investigation into improper trip trading such as parking. Ultimately, that investigation revealed that Palova, and at least 27 other employees across a wide range of age groups, had engaged in parking. United terminated all 28 of those flight attendants for violation of the JCBA.

In her operative First Amended Complaint ("Complaint"), Palova alleged that United violated the Age Discrimination in Employment Act ("ADEA") and the Texas Commission on Human Rights Act ("TCHRA"). The gravamen of Palova's claims—as repeatedly asserted in her Complaint—was that under the terms of the JCBA, her conduct *did not* constitute parking, and that her termination thus was unjustified and a pretext for age discrimination.

On March 5, 2024, the district court concluded that the Railway Labor Act ("RLA") preempted Palova's claims and dismissed the Complaint. The RLA, which regulates labor-management relations in the airline industry, mandates that disputes involving the interpretation or application of a collective bargaining agreement be resolved in arbitration before the appropriate adjustment board. The district court reasoned that because Palova alleged that she had a contractual right to make the trip

trades that resulted in her termination, resolving her claims would necessitate interpretation of the JCBA—a task reserved exclusively for the System Board of Adjustment ("System Board"). Accordingly, the district court lacked subject matter jurisdiction. Given this jurisdictional defect, the court did not opine on the alternative grounds for summary judgment United articulated in its motion.

On appeal, Palova argues that summary judgment should be reversed because her age discrimination claims do *not* require interpretation of the JCBA, and are therefore not precluded by the RLA. But the record shows that Palova *directly disputed* United's interpretation of the JCBA below through her discrimination claims, and argued that United misinterpreted the JCBA's parking provision in terminating her. Because Palova's claims here *necessitate* interpretation of disputed JCBA terms, they are precluded by the RLA.[1]

Palova's evidentiary challenges to the district court's ruling fare no better. She asserts, for instance, that the district court abused its discretion by denying a motion she filed just 11 days before trial and nearly two months after completion of summary judgment briefing, asking the court to reopen the record and allow submission of an unauthenticated and never previously produced Pinterest image.

---

[1] As a matter of nomenclature, the RLA "precludes" claims under federal law and "preempts" claims under state law. *See Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 259 n.6 (1994). United uses these terms interchangeably herein.

But Palova does not identify any facts or law suggesting the district court abused its discretion on that motion. Indeed, neither her motion to supplement nor her opening brief on appeal reference, much less substantively discuss, Rule 16 which governed her request. By failing to adequately brief the issue in both courts, Palova has waived it.

The district court correctly held that in order to resolve Palova's discrimination claims, it would be compelled to decide the proper interpretation of the JCBA's prohibition on parking, which it lacked jurisdiction to do. For these reasons, and as explained further below, this Court should affirm the district court's judgment in its entirety.

## STATEMENT OF JURISDICTION

As the district court concluded, the RLA preempts Palova's claims. Thus, the district court lacked subject matter jurisdiction over this action. *Kollar v. United Transp. Union*, 83 F.3d 124, 125 (5th Cir. 1996) ("As a general rule, disputes arising out of grievances or out of the interpretation or application of a CBA are preempted by the RLA's mandatory arbitration provisions."). This Court has jurisdiction to adjudicate this appeal pursuant to 28 U.S.C. § 1291 because the district court's order granting summary judgment to United is a final order.

## STANDARD OF REVIEW

The district court's order granting summary judgment is subject to *de novo* review. *Smith v. Reg'l Transit Auth.*, 827 F.3d 412, 417 (5th Cir. 2016). In reviewing the decision below, this Court applies the same summary judgment standard as the district court. *Id.*

This Court reviews the district court's decision denying a motion to supplement and reopen the record for an abuse of discretion. *Shepherd v. City of Shreveport*, 920 F.3d 278, 283 (5th Cir. 2019) ("We review a district court's denial of a motion to amend or supplement pretrial materials, such as briefs in opposition to summary judgment, for abuse of discretion"); *Munoz v. Orr*, 200 F.3d 291, 300 (5th Cir. 2000) ("We also review orders involving discovery under a deferential abuse of discretion standard."). Under this standard, reversal is only appropriate if the district court's decision is "arbitrary or clearly unreasonable." *Haase v. Countrywide Home Loans, Inc.*, 748 F.3d 624, 631 (5th Cir. 2014); *see also Ard v. Rushing*, 597 F. App'x 213, 217 (5th Cir. 2014) (standard imposes a "high bar"; district court's discretion in discovery matters will not be disturbed absent "unusual circumstances showing a clear abuse").

## ISSUES PRESENTED

1.    Did the district court properly conclude that it lacked jurisdiction over Palova's age discrimination claims because they required the court to interpret a disputed term of a JCBA?

2.    Did the district court abuse its discretion in denying Palova's motion to supplement her opposition to United's motion for summary judgment, filed less than two weeks before trial and seeking to add never-before-produced evidence and argument after the discovery cutoff?

## STATEMENT OF THE CASE

### I.    Factual History

### A.    Palova Was Subject To A Collective Bargaining Agreement That Prohibits "Parking"

As a former Houston-based flight attendant, Palova previously worked for Continental Airlines (1994-2010), and later United Airlines (2010-2020) when the two airlines merged.  ROA.551 (Compl. ¶¶ 13-14).  During the relevant time period, Palova was represented by the Union, and the terms and conditions of her employment were governed by the JCBA negotiated between the Union and United. ROA.551-552 (Compl. ¶¶ 18-19).

Under Section 7 of the JCBA ("Scheduling"), flight attendants were permitted to make unlimited trades of their trips, freely exchanging their assigned flights with other flight attendants at their home base through "trip trades."  ROA.1200.  In the

standard flight-scheduling process, United would assign flights based on seniority, placing trips onto a flight attendant's schedule or "line." ROA.1203-1204. Flight attendants could then "drop" unwanted trips into an open time pool for another eligible flight attendant without a conflicting trip to pick up, or trade trips with each other through United's electronic trip trading platform, subject to the limits of the JCBA. ROA.1209-1210.

However, Section 7 of the JCBA also imposed restrictions on trip trading. For example, flight attendants cannot hold trips that conflict. And as relevant here, Section 7 prohibited flight attendants from engaging in "parking," a process defined as "[t]he placement of trips on other Flight Attendant's lines to *facilitate* trading." ROA.1211 (emphasis added). Parking, in other words, is a process by which flight attendants can hoard trips by—for example—placing them on another flight attendant's line for the purpose of later trading them, or picking up a trip and placing it on the line of a flight attendant who does not intend to work that trip, just to reserve the trip for someone else. ROA.1089-1090.

The JCBA also contains Sections 23 ("Investigations & Grievances") and 24 ("System Board of Adjustment"), which outline the agreed-upon procedures for resolving disputes that involve "reference to interpretation or application of any provisions of this [JCBA]." ROA.1339 (JCBA at 195). Those procedures begin with an employee filing a grievance "in connection with the application of this

Agreement," *id.*, and end with arbitration before a System Board of Adjustment "[i]n compliance with Section 204, Title II of the Railway Labor Act." ROA.1350. (JCBA at 206); *see also* 45 U.S.C. § 184 (Section 204, Title II of the Railway Labor Act). Section 23 also provides that United and the Union "will meet twice a year" in an effort to "settle all outstanding grievances then pending before the System Board." ROA.1340-1341 (JCBA at 196-97).

### B. After Flight Attendant Complaints of Violations, United And The Union Warn Flight Attendants That Parking Is Prohibited

In late 2018, United began receiving numerous complaints—largely from senior flight attendants—about violations of the JCBA's prohibition on parking. ROA.1127-1129, 1139, 1557-1593. Given the volume of complaints, United's Labor Relations team became concerned that improper parking was creating an employee relations issue that needed to be taken seriously. ROA.1129-1130. United's Senior Vice President of Labor Relations issued a written communication to all flight attendants in March 2019. ROA.1131, 1139, 1594-1598. The communication reminded flight attendants of the JCBA's rule against parking, and explained: "*We have zero tolerance for this prohibited behavior. When we discover that it's occurring, we will fully investigate and take appropriate action, up to and including discharge*." ROA.1594-1598 (emphasis added). The communication further explained that the prohibition on parking was "about *fairness*, plain and simple. No Flight Attendant should have an unfair advantage

when it comes to managing their schedule or accessing flying opportunities." *Id.* (emphasis added).

The Union issued a separate communication the following day emphasizing that parking was negatively affecting Union members and violating the JCBA. The Union's notice explained: "Over the past few months, we have been aware that many of you have voiced concerns about illicit trip brokering where certain individuals have been improperly 'parking' and holding trips for their personal gain." ROA.1600-1601. The Union warned that "[t]he noise on this subject has continued to grow to a point where management has been left with no alternative but to investigate these concerns and to take the necessary actions to address these ongoing concerns." *Id.* And the Union explained that while it had negotiated flexibility in scheduling under the JCBA, that flexibility did not extend to "parking of pairings with the intent to broker, buy or sell the pairing to another Flight Attendant. . . . Those individuals who are participating in this activity are creating a disservice to the entire Membership." *Id.*

### C. United Launches An Investigation Of Parking Activity And Identifies Numerous Violators, Including Palova

Thereafter, after receiving a high volume of complaints about parking, United's Director of Inflight Labor Relations instructed United's Corporate Security Department ("Corporate Security") to investigate which flight attendants were engaging in the practice. ROA.1092, 1128-1129, 1642-1643. Corporate Security

gathered and reviewed system-wide flight transaction data from the year. ROA.1642-1644. Corporate Security then developed an algorithm to analyze flight trading data and determine who had engaged in problematic trades. *Id.* Using this process, Corporate Security identified Palova and 27 other flight attendants whose trading records reflected improper parking across United's Houston, San Francisco, and Newark hubs. ROA.1138-1140, 1615.

### D. United Terminates Palova And 27 Other Flight Attendants Across Three Bases

In February 2020, pursuant to the JCBA's disciplinary procedures, Palova received a Letter of Investigation ("LOI") three days before her investigatory interview with Corporate Security. ROA.481. The LOI referenced three questionable flight pairings for international trips that occurred *after* United's written communication to flight attendants, and that Palova had placed on other flight attendants' lines in apparent instances of parking. *Id.*; *see also* ROA.570. Palova participated in the Corporate Security investigatory interview along with Houston's Inflight Supervisor Shannon Bustamente and a Union representative. ROA.2291-2294; *see also* ROA.567-570. During that investigatory interview, United provided Palova the opportunity to explain her trading activity or otherwise explain why she should not be disciplined for parking. *Id.*; *see also* ROA.483-484, 1609-1613, 2299. Palova asserted that the JCBA *authorized* all of her trading activity and that her trades did not constitute parking. ROA.1117-1119, 1122, 483-

484, 1605-1607.  United found Palova's explanations unconvincing and concluded she had engaged in parking in violation of Section 7.I.19 of the JCBA.  ROA.1605-1607.  On February 28, 2020, United terminated Palova's employment.  *Id.*

In addition to Palova, United terminated 27 other flight attendants across San Francisco, Houston, and Newark hubs.  ROA.1139, 1615.  Out of the total 28 flight attendants terminated, 24 were younger than Palova, and 18 were more than a decade younger than Palova.  *Id.*  The average age of those terminated was 43 (16 years younger than Palova), and 11 of those terminated were under the age of 40.  *Id.*

As required by the JCBA, United sent Palova a letter on March 5, 2020 outlining the basis for her termination.  ROA.1605-1608.  Palova then filed a grievance under the JCBA procedures to contest her termination.  ROA.558 (Compl. ¶¶ 53-54).  In her grievance—which was pending at the time of the decision below—Palova contended that United wrongfully terminated her under the JCBA's parking provision.  *See* ROA.1093, 1139.

## II.    Procedural History

### A.    Palova Initiates This Litigation, Alleging That United Misconstrued Her Trip Trades as Parking Based On Its Misunderstanding of the JCBA

Palova filed suit against United on October 20, 2021.  ROA.17.  In her Complaint, Palova did not dispute that she made the trip trades that resulted in her termination; rather, she alleged that the JCBA authorized her to make those trades.

*See, e.g.*, ROA.554 (Compl. ¶ 36). According to Palova, her trades could not constitute parking because "[t]he JCBA . . . allows . . . unlimited trading." ROA.558 (Compl. ¶ 52). Palova also asserted that, based on her interpretation of the JCBA and the communications from United and the Union, the only impermissible trading activities were trip "brokering" or receiving compensation in exchange for a trade. ROA.556 (Compl. ¶ 44). And because she did not broker or "take any compensation" from her "alleged 'parked trips,'" the "correct finding" was that her "trips were not 'parked' or in violation of any company policy." ROA.556-557 (Compl. ¶¶ 39-40, 43, 49).

Furthermore, even though the JCBA defines parking as placing a trip on the line of another flight attendant to facilitate trading, Palova testified below that the JCBA's parking prohibition only prohibited "placing [a] trip from *open time* on somebody's line that ha[s] no knowledge of it." ROA.1119 (emphasis added). She testified that she was thus free to place a trip from her *own* line onto the line of another flight attendant without their knowledge, and that United's contrary understanding was inconsistent with the JCBA. *See id.* (Q: "So if you bid for a trip . . . and you then place . . . that trip . . . on your line, and then you placed it on someone else's line without letting them know, would that have been parking also?" A: . . . "[T]o the company[] . . . that would be parking. To the explanation of the contract, it's the trips from open time. That's different.").

In addition to claiming she had a contractual right to make her improper trip trades which resulted in parking, Palova also asserted that the JCBA's limits on trading were ill-defined and ambiguous.   For example, Palova alleged in her Complaint that that the "JCBA . . . *does not define 'parked trips' or 'parking trips'*" and only "reference[s] [] 'parking' in [] section 7.I.19."  ROA.552 (Compl. ¶ 23) (emphasis added).

## B.    The System Board Adjudicates A Similar Parking Termination

Other flight attendants whose employment United also terminated for impermissible parking filed grievances to be arbitrated before the System Board. While this litigation was pending, on April 19, 2023, the System Board issued its first arbitral decision interpreting and applying "parking" to resolve a grievance brought by a Newark-based flight attendant challenging her termination. ROA.1617-1639.  In its decision, the System Board provided a detailed history of scheduling and trading practices at United and Continental, and the bargaining history that resulted in the JCBA's prohibition on parking.  *Id.*  The System Board then found that parking does not "require remuneration."  ROA.1632-1633, 1637. "Indeed, the System Board considers that the harm to other Flight Attendants caused by parking is the same regardless of whether some type of payment or favor results from the impermissible parking."  ROA.1633.   The System Board ultimately

reasoned that that United had just cause for terminating the Newark flight attendant under the JCBA. ROA.1638.

### C.    Palova Moves to Supplement The Summary Judgment Record and Reopen Discovery Less Than Two Weeks Before Trial

United filed a motion for summary judgment on November 13, 2023, and briefing was completed on January 3, 2024.  On February 27, 2024—nearly six months after close of discovery, nearly two months after completion of summary judgment briefing, and less than two weeks before trial—Palova moved to supplement the summary judgment record and to reopen discovery.  ROA.7448-7548.  Palova sought to introduce a "meme" that was "pinned" (*i.e.*, posted by a third party and saved by a user) on the Pinterest account of user "shantan77," an account Palova contends belongs to Houston's Inflight Supervisor Shannon Bustamento. ROA.7448, 7455-7458.

Palova asked the district court to reopen discovery so she could propound a request for admission ("RFA") to United for the purpose of authenticating the Pinterest image.  ROA. 7448.  The proposed RFA asked United to confirm that the account on which Palova discovered the meme belonged to Bustamento.  ROA.7498.

### D.    The District Court Grants United's Motion for Summary Judgment Based on RLA Preemption

United moved for summary judgment on two alternative grounds, each of which was independently sufficient to warrant dismissal.  United argued that (1) the

RLA precluded Palova's claims, and (2) there was no direct or circumstantial evidence that Bustamento—the Houston Inflight Supervisor who attended Palova's Corporate Security interview and terminated her employment—did so based on discriminatory motive. ROA.1081-1644.

On March 5, 2024, the district court ruled that the RLA precluded Palova's claims and granted summary judgment in United's favor. *Palova v. United Airlines, Inc.*, 2024 WL 1514962, at *3 (S.D. Tex. Mar. 5, 2024). The court reasoned that "[b]y asserting that she was authorized by the JCBA to trade trips as she did," and that United "wrongfully labeled her proper trip trades as Parking," Palova had "put[] interpretations of provisions of the JCBA at the center of this dispute." *Id.* at *3. Thus, for the district court to "properly conduct the burden-shifting analysis associated with discrimination cases," it would "have to determine whether [Palova's] trip trading constituted Parking and warranted her termination." *Id.*

As the district court explained, if Palova establishes a *prima facie* case of discrimination, the burden would shift to United to articulate a legitimate, nondiscriminatory reason for the termination. Once United does so, the burden would shift back to Palova to demonstrate that United's reason for termination was a pretext for a discriminatory motive. The district court recognized that at the second step of this analysis, United would "rely on the JCBA"—and specifically on the contractual provision prohibiting "parking"—as its legitimate, nondiscriminatory

reason for Palova's termination. *Id.* Moreover, at the pretext stage, Palova would argue "as she [did] in her [Complaint] . . . that she had the unlimited right to trade trips and her trip trades complied with the JCBA." *Id.* "At that point, the Court will be required to determine if Plaintiff actually engaged in Parking," which would necessitate the interpretation of disputed contractual language—a task reserved exclusively for an arbitrator under the RLA. *See id.* The district court thus reasoned that the RLA precluded Palova's claims and that the court lacked subject matter jurisdiction.

Because the district court found that the RLA precluded Palova's claims, it did not address United's alternative ground for summary judgment, *i.e.*, whether there was any evidence of unlawful motive for Palova's termination. In light of the district court's ruling, it did not address Palova's then-pending motion to supplement the record and reopen discovery.[2]

## SUMMARY OF THE ARGUMENT

The district court correctly concluded that it lacked subject matter jurisdiction over Palova's age discrimination claims because Palova has placed at issue the interpretation and application of the JCBA.

---

[2] That motion was therefore implicitly denied. *Snider v. L-3 Communs. Vertex Aero., L.L.C.*, 946 F.3d 660, 667 (5th Cir. 2019) ("When a district court enters a final judgment, it has implicitly denied any outstanding motions, even if the court does not explicitly deny a particular motion.").

Under the RLA, courts lack jurisdiction to hear disputes that require interpretation or application of a CBA. As the district court recognized, the interpretation or application of terms in an existing CBA are deemed RLA "minor disputes," and they cannot be resolved in court; they must be heard in arbitration before an adjustment board. This dispute-resolution process is mandatory and exclusive—a plaintiff cannot circumvent it by filing a federal claim that requires the court to shoulder the task of interpreting and applying the CBA.

Palova's challenge to the district court's RLA holding suffers from two fundamental errors. *First*, she repeatedly insists that her claims do not involve contractual interpretation but only contractual reference, but that is incompatible with her own pleadings, allegations, and sworn testimony. Palova presents her appeal as a repeat of *Carmona v. Southwest Airlines Company*, 536 F.3d 344 (5th Cir. 2008), but that plaintiff did not dispute that he violated the terms of his CBA (and the System Board had already determined he did), so his claims could proceed with mere "reference" to the CBA. Conversely, Palova's claims and the record below make clear that Palova asserts that under the JCBA's trip trading provisions, she did not take action that constituted prohibited parking at all, and was therefore terminated without any basis under the JCBA. Palova's interpretation of her contractual trip trading rights is therefore at odds with the contractual interpretation and application United relied upon when it concluded she engaged in parking. Only

one of those two interpretations of the JCBA can be correct. Given that, to assess whether United has articulated a legitimate basis for termination (*i.e.*, parking) and Palova's showing of pretext, a court would necessarily have to engage in contractual interpretation, the very task the RLA reserves for the System Board. *Second*, Palova overreads *Carmona* as holding that RLA preclusion only applies where contractual interpretation of a CBA is claim dispositive. This Court, however, has applied preemption where contractual interpretation was required but not necessarily claim dispositive. *Carmona* did not disturb these authorities. To the contrary, *Carmona* cited and reaffirmed this Court's prior holding in *Reece*, which held that federal labor law preempted claims similar to those presented here—where interpretation of the CBA was required but not necessarily dispositive.

Palova's challenge to the district court's denial of her motion to supplement the record with additional evidence and argument—and to reopen discovery—is similarly without merit. Federal Rule of Civil Procedure 16 governed Palova's motion to supplement, and thus, to obtain the relief she sought, Palova had to demonstrate "good cause," satisfying factors including diligence and prejudice. Palova did not even cite Rule 16 or the good cause standard below, let alone argue it—nor did she do so in her submission to this Court. Not only did Palova fail to preserve the issue by adequately raising it below, she also waived it by failing to

meaningfully brief it here.  But even if Palova had properly preserved and presented the issue for appeal, the good cause standard was not satisfied here.

United submits that the Court should affirm the district court's summary judgment order in its entirety.  However, if this Court concludes that the RLA does not preempt Palova's claims, the Court should follow its practice of remanding the case to the district court for consideration in the first instance of United's alternative grounds for summary judgment briefed below.

## ARGUMENT

### I.    The District Court Correctly Held That The RLA Precludes Palova's Claims[3]

#### A.    The RLA Precludes Claims That Require Interpretation Of A CBA

The RLA establishes a "comprehensive framework" for resolving disputes between labor and management in the airline industry.  *Hawaiian Airlines*, 512 U.S. at 252.  In particular, disputes over "the interpretation or application" of a CBA are deemed "minor disputes," and they "must be resolved through a compulsory, binding arbitration procedure before an adjustment board."  *Mitchell v. Cont'l Airlines, Inc.*, 481 F.3d 225, 231 (5th Cir. 2007) (citing *Consol. Rail Corp. v. Ry.*

---

[3] The EEOC has submitted an amicus brief in this case largely echoing the arguments advanced by Palova.  While the EEOC enforces certain federal anti-discrimination laws, it has no particular expertise regarding RLA preemption.  Thus, the Court should not give weight to the agency's submission.  *Cf. Loper Bright Enters. v. Raimondo*, 144 S.Ct. 2244, 2265-66 (2024).

*Labor Execs.' Ass'n*, 491 U.S. 299, 303 (1989)); *Carmona*, 536 F.3d at 347 ("minor disputes are exclusively within the jurisdiction of RLA adjustment boards"); *see also* 45 U.S.C. § 184 (air carriers and unions must establish arbitral boards to resolve "disputes between an employee or group of employees and a carrier or carriers by air growing out of grievances, or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions").

As Palova acknowledges, the RLA preempts or precludes claims that can be "conclusively resolved" by interpreting a CBA. Appellant's Opening Brief ("App. Br.") 18. However, she incorrectly asserts that RLA preemption *only* applies when interpretation of the parties' CBA is claim dispositive, and that this "has been the law in the Fifth Circuit and throughout the United States for decades"—with no citation to any such authority. *Id*. at 19. To the contrary, this Court has made clear that the RLA preempts any claim whose resolution "requires an interpretation of a collective bargaining agreement." *Anderson v. Am. Airlines*, 2 F.3d 590, 595 (5th Cir. 1993) (explaining that preemption applied where claim a "could not be properly adjudicated without interpreting the terms and conditions of the applicable collective bargaining agreement"); *Kollar*, 83 F.3d at 126 (RLA preempted claim because it "require[d] reference to and interpretation of the CBA"); *Blankenship v. Atchison, Topeka, & Santa Fe R. Co.*, 140 F.3d 1037, 1998 WL 156310 (Table), at *3 (5th Cir. 1998) (per curiam) ("The questions of whether the drug testing and dismissal were

proper can only be answered by consultation with and interpretation of the CBA. Therefore, the claims are preempted by the RLA."); *see Parham v. Carrier Corp.*, 9 F.3d 383, 390 (5th Cir. 1993) (preemption under LMRA applies to state tort claim, unless claim "can be resolved without having to interpret a collective bargaining agreement"); *Thomas v. LTV Corp.*, 39 F.3d 611, 616 (5th Cir. 1994) (preemption under LMRA applies to claims that are "inextricably intertwined" with the CBA or "require[] interpretation of the collective-bargaining agreement"); *Richter v. Merchs. Fast Motor Lines, Inc.*, 83 F.3d 96, 97 (5th Cir. 1996) (per curiam) (same for contract and tort claims).

This Court has long held that where an element of a plaintiff's claim or an employer's defense requires interpretation of a CBA, the plaintiff's claim is preempted by federal labor law. In *Reece v. Houston Lighting & Power Company*, the Court addressed this issue under circumstances remarkably similar to Palova's. There, the plaintiff asserted claims for race discrimination and retaliation. 79 F.3d 485, 486 (5th Cir. 1996). The plaintiff did not complete the required grievance process under the CBA before seeking relief in court, but nonetheless her discrimination claim "turn[ed] on questions of promotion, seniority, and assignment to training programs, all of which [were] provided for in the CBA." *Id.* at 487. The Court concluded that the employer would "undoubtedly rely on the CBA as its legitimate, non-discriminatory reason for [plaintiff's] treatment," and when plaintiff

attempted to "show that [the employer's] stated reason [was] pretextual, the CBA *would have to be interpreted* because [plaintiff] would have to challenge [employer's] rights under the CBA." *Id.* (emphasis added). The Court thus affirmed the grant of summary judgment to the employer, concluding that "the interpretation of the CBA [was] *made necessary* by an employer defense" to the plaintiff's claim. *Id.* (emphasis added; quotations omitted). Although the plaintiff in *Reece* was subject to the Labor-Management Relations Act ("LMRA") rather than the RLA, nothing in the Court's analysis suggested that the preemption inquiry would have differed if the plaintiff had been subject to the RLA. *See also Carmona*, 536 F.3d at 350 (confirming applicability of *Reece*); *Blankenship*, 1998 WL 156310, at *3 (same preemption analysis applies under RLA).

**B.** ***Carmona*—and other Discrimination Cases—Confirm that the RLA Precludes Claims That Require Interpretation Of A CBA**

*Reece* held that a federal labor statute precluded claims that required interpretation of a CBA—and *Carmona* did not disturb that holding. Instead, in *Carmona*, this Court explained that neither party had identified any CBA provision "in dispute or in need of interpretation to adjudicate" the plaintiff's claims. 536 F.3d at 350. In fact, in that case, the plaintiff first challenged his termination before the System Board of Adjustment, "follow[ing] the grievance procedures in the CBA and provisions in the Railway Labor Act." *Id.* at 346. After his termination was upheld

at the "final level of review," he sued Southwest Airlines for disability discrimination and FMLA retaliation in federal court. *Id.* The issue for the district court, at that stage, was not whether Southwest Airlines properly interpreted the CBA in terminating plaintiff—that issue had been resolved. Thus, as this Court ultimately explained on appeal, the claims in *Carmona* only required "reference to the CBA and reliance on it," not "interpretation" of the CBA, as plaintiff "[did] not bring the meaning of any CBA provisions into dispute." *Id.* at 349 ("there is no disagreement about how to interpret these provisions of the CBA that detail Southwest's procedures for assessing attendance, leave, discipline, and termination").

Indeed, *Carmona* reaffirmed this Court's prior holding in *Reece*, explaining that the key difference between *Carmona* (where preemption does *not* apply) and *Reece* (where preemption *does* apply) is that the plaintiff in *Reece* "directly challenged his employer's rights under the CBA," which "required interpretation of the CBA," while in *Carmona*, neither party "identified any CBA provision in dispute or in need of interpretation." *Id.* at 350.

District courts in this Circuit have recognized that *Carmona* does not narrow the scope of RLA preemption as Palova suggests. *See, e.g., PHI, Inc. v. Office & Prof'l Emps. Int'l Union*, 2010 U.S. Dist. LEXIS 101692, at *52 (W.D. La. Sep. 24, 2010) (citing *Carmona* and stating that "[t]he crux of the question . . . in all

preemption cases — is whether an interpretation of the CBA is required"); *CareFlite v. Off. & Pro. Emps. Int'l Union, AFL-CIO*, 766 F. Supp. 2d 773, 779 (N.D. Tex. 2011) ("Under [*Carmona*] the relevant inquiry is whether [the] defense requires interpretation [of] the CBA." (emphasis omitted)).

Palova also argues—without any reference to authority—that federal courts have "universally held that the RLA does not preempt federal and state law discrimination claims," App. Br. 16, but that assertion is demonstrably false. Courts in this Circuit and elsewhere have repeatedly recognized that the above preemption analysis applies equally in such cases: federal labor law preempts discrimination claims when analyzing either the employer's legitimate, non-discriminatory basis for an adverse action, or the employee's pretext argument, *necessitates* contractual interpretation. *See, e.g.*, *Covalt v. Pintar*, 2007 WL 7239321, at *3 (S.D. Tex. June 29, 2007) ("Employment discrimination claims are also regularly preempted."); *Korndoffer v. W. States Fire Prot. Co.*, 2004 WL 2750231, at *5 (W.D. Tex. Dec. 2, 2004) (age discrimination claim preempted by LMRA); *Woodrow v. Inland Paperboard & Packaging, Inc.*, 2005 WL 6482749, at *6 (E.D. Tex. July 21, 2005) (racial discrimination claim preempted by LMRA); *Moreno v. STP Nuclear Operating Co.*, 172 F. Supp. 2d 857, 858-60 (S.D. Tex. 2001) (national origin discrimination claim); *Frost v. Harper*, 2001 WL 34063533, at *6 (S.D. Tex. Mar. 23, 2001) (age, race, and sex discrimination claims); *Cox v. United Parcel Serv.*,

*Inc.*, 2000 WL 28176, at *3 (E.D. La. Jan. 12, 2000) (age and race discrimination claims); *Karydas v. Hous. Grinding & Mfg. Co.*, 1998 U.S. Dist. LEXIS 21321, at *7-9 (S.D. Tex. June 21, 1998) ("age and national origin" discrimination claims); *McCall v. McQueen*, 962 F. Supp. 890, 893 (E.D. La. 1997) (age and race discrimination claims); *Odell v. Kalitta Air, LLC*, 107 F.4th 523, 534 (6th Cir. 2024) (RLA preempted disability discrimination claim because if plaintiffs "can make out a prima facie case," then defendant "will have to proffer a nondiscriminatory reason for its actions, which the [plaintiffs] will then have to demonstrate is pretextual"— requiring the court to interpret relevant CBA provisions); *Polk v. Amtrak Nat'l R.R. Passenger Corp.*, 66 F.4th 500, 507 (4th Cir. 2023) ("Since Polk's Title VII claim requires the interpretation of a CBA, it is a minor dispute."), *cert. denied*, 144 S. Ct. 553 (2024).

Most recently, the Southern District of Texas agreed with the district court in a case largely identical to Palova's, holding that a plaintiff's age discrimination claim was preempted by the RLA because it would "require the Court to interpret the JCBA." *Sjoberg v. United Airlines, Inc.*, 2024 WL 4219736, at *3 (S.D. Tex. Sep. 17, 2024); *accord PHI*, 2010 U.S. Dist. LEXIS 101692, at *52 (W.D. La. Sep. 24, 2010) (citing *Carmona* and stating that "[t]he crux of the question . . . in all preemption cases — is whether an *interpretation* of the JCBA is required") (emphasis in original); *CareFlite*, 766 F. Supp. 2d at 779 (under *Carmona*, "the

relevant inquiry is whether [the] defense requires interpretation [of] the JCBA" (emphasis omitted)).

**C.    Just As In *Reece*, Palova's Claims Squarely Present An Interpretive Dispute Over The JCBA, And Are Thus Preempted.**

Palova does not address *Reece* or the related authorities, nor does she substantively discuss the relevant provisions of the JCBA, the Complaint, or her deposition testimony. Understandably so, as that analysis reveals that unlike the plaintiff in *Carmona*, Palova has placed at issue the proper interpretation of the JCBA's parking provision from the outset of this case, alleging that United improperly interpreted the provision to prohibit her trip trades. *See Reece*, 79 F.3d at 487.

The crux of Palova's dispute involves Section 7.I.19 of the JCBA, which states: "The placement of trips on other Flight Attendant's lines to facilitate trading ("parking") is not permitted." ROA.1211. United contends that this provision, based on plain language, bargaining history, and past practice, prohibits a flight attendant from placing trips on others' lines (regardless of whether the trip was in open time or on the flight attendant's line) to facilitate trades *even if* the flight attendant does not receive compensation or other personal benefit. Under United's interpretation of this provision, Palova's conduct constituted prohibited parking and United therefore had just cause to terminate her employment. But Palova has placed at issue the proper interpretation of the JCBA's parking provision from the outset of

this case, alleging that United improperly interpreted that provision to prohibit her trip trades. Notably, in her Complaint, Palova raised numerous allegations disputing United's interpretation or application of the parking provision—contending, for example, that United "improperly referred to Ms. Palova's April 11th trip trade as an illegal parking" when it was not; that Palova did not "egregiously violate[] any company policies"; that there was "overwhelming proof that Palova did not engage in parking trips as alleged by [United]"; and that the "JCBA section 7.I.19" only prohibits parking "for personal gain," while Palova "never received any compensation, benefit or brokering" from her trades. ROA.24-25 (quotations omitted).[4] In short, Palova's own allegation is that her actions did not constitute a violation of the JCBA, so United had no basis for her termination.

United, obviously, asserts that the contractual prohibition on "parking" under the JCBA is broader than that. If United's interpretation is correct, it had a clear, nondiscriminatory basis for her termination (and 27 other flight attendants who committed similar parking violations). To demonstrate the legitimacy of Palova's termination and rebut her effort to show pretext, United will necessarily rely on both the text of the JCBA and the System Board's interpretation of it. Palova's claims

---

[4] In the record below, Palova made clear that she reads the CBA as authorizing any and all trip trades that do not involve brokering, accepting money for trips, or placing a trip from "open time" on another flight attendant's line without their knowledge. *See* ROA.552 (Compl. ¶ 19); ROA.556 (Compl. ¶¶ 43-44).

thus "turn on" interpretation of the JCBA, making the Court's holding in *Reece* far more applicable here than *Carmona*. Just like the plaintiff in *Reece*, Palova raises a discrimination claim that ensures the JCBA will "have to be interpreted," because she challenges her employer's right to terminate her employment "under the CBA." 79 F.3d at 487. Resolving that argument in a judicial forum will draw the district court into an interpretive dispute that the RLA reserves for the System Board.[5]

Palova also asserts that the district court erred because it "misunderstood" the Supreme Court's decision in *Hawaiian Airlines*. App. Br. 21-22. This assertion is misplaced given that the district court's decision contains a single reference to the case and cites it merely to note that the RLA preempts state law claims and precludes federal claims. *Palova*, 2024 WL 1514962, at *2. In any event, Palova argues that "[p]urely factual questions' about an employee's conduct or an employer's conduct and motives . . . do not 'requir[e] a court to interpret any term" of a CBA. App. Br.

---

[5] In its pre-trial submission while its motion for summary judgment was pending, United asserted that the System Board's arbitration decision regarding the meaning of the term "parking" was binding and thus could not be contested by the fact finder. According to Palova, this shows that "even from United's view, the resolution of Palova's claim would not involve an interpretation of the CBA." App. Br. 28. Not so. United's argument derived from a longstanding legal principle: that an arbitration decision interpreting a labor contract is binding and the decision is incorporated into the CBA. Moreover, United's submission was prepared in anticipation of trial, which would only occur if the Court concluded that the RLA *did not* preempt Palova's claims. *See, e.g.*, *Barnett v. United Air Lines, Inc.*, 738 F.2d 358, 360 (10th Cir. 1984) (System Board renders "final, binding" decisions).

21-22 (quoting *Hawaiian Airlines*, 512 U.S. at 261-62).  But here, there is no *factual* dispute about Palova's conduct or United's conduct:  everyone agrees on exactly which trades Palova made, and the basis United gave for her termination.  Instead, the case requires determinations on *interpretive* questions:  do those trades Palova undisputedly made constitute parking under the JCBA, and was United authorized under the JCBA to terminate her for that violation?

### D. The RLA Precludes Claims in a Narrow Set of Discrimination Cases, Where The Purposes of Stability and Certainty Are Served.

Palova is also wrong that the district court's preemption holding would "swallow up" employee protections "whenever the employer could identify a pretextual infraction that requires some reference to a collective bargaining agreement."  App. Br. 16-17.  The district court here, as in *Reece*, found that preemption applied only because the plaintiff's claims would *require* the court to interpret the JCBA.  That holding addresses a clearly-defined subset of cases in which plaintiffs challenge their employer's reading of a CBA in court; it does not risk "swallow[ing] up" cases like *Carmona* where a plaintiff does not dispute the issue of how to interpret the relevant CBA provision that led to his termination.

Moreover, the district court's decision here accords with the purpose of the RLA to "promote stability in labor-management relations."  *Carmona*, 536 F.3d at 351.  Here, Palova challenges a CBA provision that United has applied to *27 other*

employees terminated for parking—some of whom have already challenged their

terminations at the System Board.  To permit a plaintiff to bypass the System Board's

interpretation of the JCBA here, and instead obtain a judicial interpretation by filing

a federal discrimination claim, would disrupt rather than promote stability in future

labor disputes between United and the Union.

### E.     The District Court's Purported Failure to Follow a Non-Binding Decision of Another District Judge Has No Legal Import

Palova objects that the district court did not follow the preemption analysis of

other courts in the district.  App. Br. 22.  As an initial matter, numerous district

courts, including in the Southern District of Texas, have dismissed as preempted

discrimination claims substantively similar to Palova's.  *See, e.g.*, *Sjoberg*, 2024 WL

4219736, at *4 (relying on *Palova*); *Frost*, 2001 WL 34063533, at *6 (relying on

*Reece* and concluding that LMRA preempted discrimination claim); *Moreno*, 172 F.

Supp. 2d at 858-60 (same).  More fundamentally, "district court decisions are not

binding precedent, even in the same district court."  *Weatherly v. Pershing, L.L.C.*,

945 F.3d 915, 928 (5th Cir. 2019).

Additionally, the case Palova faults the district for not following—*Finger v.*

*United Airlines, Inc.*, 2021 WL 3813366 (S.D. Tex. Aug. 26, 2021)—is not

analogous to her case.  Unlike Palova, the plaintiff in *Finger* did not "allege that

United ha[d] misapplied or misinterpreted the CBA." *Id.* at *3.  In fact, the plaintiff

did not even contest in court that United had a contractual right to terminate her

employment. *Id.* Accordingly, the resolution of the plaintiff's claim did not necessitate contractual interpretation. The district court's failure to rely on this authority is immaterial to Palova's appeal.

## II. Palova's Right to a Jury Trial Does Not Negate RLA Preemption

Palova contends that the district court's finding that the RLA preempted her ADEA claim deprived her of the right to a jury trial. App. Br. 26. This argument could be made any time a district court grants summary judgment or dismissal in a case involving a right to jury trial, so it is unsurprising that Palova cites no relevant authority holding that the right to a jury trial supersedes RLA preemption. In any event, Palova waived this argument by failing to raise it in her opposition to United's motion for summary judgment below.

"[T]he scope of appellate review on a summary judgment order is limited to matters presented to the district court." *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 339 (5th Cir. 2005). Accordingly, if a party "fails to assert a legal reason why summary judgment should not be granted, that ground is waived and cannot be considered or raised on appeal." *Id.* To preserve an argument for appellate review, the appellant must have done more than "intimate" it. *Id.* Rather, the appellant must make the argument "to such a degree that the district court ha[d] an opportunity to rule on it." *Id.* at 340; *see also Nichols v. Enterasys Networks, Inc.*, 495 F.3d 185,

189 (5th Cir. 2007) (issue that was not "clearly raised in front of the district court

. . . cannot be considered on appeal").

In her opposition to United's motion for summary judgment, Palova argued

that the RLA did not preempt her claims.  However, she did not assert that its

application would unlawfully deprive her of a Constitutional or statutory right to a

jury trial.  ROA.2185-2212.  As a result, the district court did not address the issue

in its summary judgment order and Palova failed to preserve it for appellate review.

Palova's argument also suffers from substantive defects.  Federal courts have

repeatedly concluded that federal labor statutes, including the RLA, preempt ADEA

claims—which would not be possible if the ADEA's guarantee of a jury trial

automatically overrode RLA preemption.  *See, e.g.*, *Miller v. Am. Airlines, Inc.*, 525

F.3d 520, 524 (7th Cir. 2008); *Schiltz v. Burlington N. R.R.*, 115 F.3d 1407, 1414

(8th Cir. 1997); *Rodee v. Am. Airlines, Inc.*, Case No. 4:03-cv-01193 (Dkt. 40 at 4)

(N.D. Tex. Oct. 2, 2003); *Avina v. Union Pac. R.R. Co.*, 2022 WL 2353078, at *1

(W.D. Mo. May 11, 2022), *aff'd*, 72 F.4th 839 (8th Cir. 2023), *cert. denied*, 144 S.

Ct. 555 (2024).  Courts have also squarely rejected the argument that a constitutional

or statutory right to a jury trial nullifies the preemptive effect of the RLA or other

federal labor statutes.  *Jackson v. Consol. Rail Corp.*, 717 F.2d 1045, 1049 n.6 (7th

Cir. 1983) (rejecting assertion that RLA preemption "would violate his Seventh

Amendment right to a jury trial" and noting that argument "requires only cursory

consideration"); *Montag v. Aerospace Corp.*, 94 F.3d 652, 1996 WL 454544 (Table), at *2 (9th Cir. 1996) (rejecting contention that LMRA preemption violated right to a jury trial).

To suggest that RLA preemption *ipso facto* violates one's right to a jury trial, Palova relies on *Alexander v. Gardner-Denver Co.*, 415 U.S. 36 (1974). App. Br. 26. But *Alexander* did not address preemption (under the RLA or otherwise) or the appropriate judicial handling of a claim which necessitates interpretation of a labor contract. Rather, the *Alexander* Court addressed whether seeking to enforce a contractual right in arbitration precludes a plaintiff from also seeking judicial relief under Title VII. *Id.* at 38, 51-54. Palova cites no law suggesting that *Alexander* is relevant to the RLA preemption analysis here, and the limited authority United located on the topic demonstrates it is not. *See, e.g., Pritchard v. Am. Airlines, Inc.*, 708 F. Supp. 3d 861, 866 (N.D. Tex. 2023) (*Alexander* is "inapposite" to RLA preemption of federal statutory claims, because preemption turns on the need for avoiding judicial involvement in CBA application).

Finally, Palova mistakenly suggests that the court will not be required to interpret the JCBA, simply because United did not propose a jury question regarding that interpretation (App. Br. 28)—but this misunderstands RLA preemption. RLA preemption is not a factual issue to be decided by the jury; it is a jurisdictional issue, and "[j]urisdictional issues are for the court—not a jury—to decide, whether they

hinge on legal or factual determinations." *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981); *Stockman v. FEC*, 138 F.3d 144, 151 (5th Cir. 1998) (when "it appears that subject matter jurisdiction is lacking," it is "incumbent" on the court to dismiss). Stated simply, RLA preemption was not a proposed jury question because it is not a factual issue for the jury to resolve.

## III.    The District Court Properly Denied Palova's Motion to Supplement the Summary Judgment Record and Reopen Discovery to Introduce the Pinterest Meme and Additional Written Argument

Palova's evidentiary challenges to the district court's ruling on her motion to supplement are equally unavailing. Palova contends that the district court erred because it declined to consider alleged evidence of a discriminatory motive for her termination. App. Br. 29. Specifically, the evidence on which Palova sought to rely was a meme saved on a Pinterest account by user shantan77, which Palova sought to introduce 11 days before trial.[6] ROA.7448, 7455-7456. Based on that unauthenticated screenshot from a Pinterest account, Palova asserted for the first time that this case involves "direct evidence" of discriminatory animus. ROA. 7450-7451.

---

[6] The district court denied Palova's untimely motion to reopen the summary judgment before United filed a response. Thus, United's response and supporting evidentiary submission regarding that motion are not part of the record in this case. However, United notes that Palova makes a slew of false statements regarding the evidence in question and its import that cannot be fully addressed on the present record. Nevertheless, United submits that the Court can summarily reject Palova's argument on this issue on the current record.

Palova makes no showing whatsoever that the district court abused its discretion here. *See Shepherd*, 920 F.3d at 283; *Munoz*, 200 F.3d at 300 (where a district court denies a motion to supplement the record, that decision is subject to review for abuse of discretion). While Palova mentions that abuse-of-discretion review applies in her opening brief, she does not point to any conduct by the district court suggesting it abused discretion in denying her motion. That is an independently sufficient basis to affirm the district court's denial of the motion. *See Arnold v. Williams*, 979 F.3d 262, 270 (5th Cir. 2020) (affirming district court order regarding motion to supplement opposition to summary judgment because appellant did not argue that the district court abused its discretion, but only that the district court "improperly disregarded" the supplemental submission); *Foster v. Ferrellgas, Inc.*, 834 F. App'x 88, 91 n.2 (5th Cir. 2020) (appellant waived argument that direct evidence of discrimination "obviates the need to make out a *McDonnell Douglas* prima facie case based on circumstantial evidence" "because he "did not present a direct evidence claim to the district court").

Additionally, Palova failed to show good cause below for supplementing the record, as required by Rule 16 of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 16(b)(4); *Shepherd*, 920 F.3d at 287. Palova made a four-page submission to the district court seeking to introduce new evidence and argument, but did not once reference Rule 16 or any of the factors that govern its application. ROA.7448-

7551. Nor did Palova mention Rule 16 or the good cause standard in her opening brief to this Court. Her failure to substantively address (or even mention) the relevant standard and demonstrate she has satisfied it amounts to waiver; she did not preserve the issue below or adequately brief it for consideration here. *Crampton v. Weizenbaum*, 757 F. App'x 357, 370 (5th Cir. 2018) (the "district court did not abuse its discretion in denying [plaintiff's] motion to supplement the summary judgment record . . . after discovery closed and briefing . . . was complete" because plaintiff did not "justify" the "delay" and thus did not "show [] good cause" pursuant to Rule 16); *Million v. Exxon Mobil Corp.*, 837 F. App'x 263, 265 (5th Cir. 2020) (per curiam) (affirming judgment where "district court denied [the] motion because it did not address Rule 16(b)(4)'s good cause requirements"); *see also Fulford v. Lowe's Home Ctrs., LLC*, 811 F. App'x 240, 241 (5th Cir. 2020) (per curiam) (affirming judgment where "district court denied [] motion" for leave to amend after summary judgment motion because plaintiff "failed to address, let alone satisfy, the 'good cause' standard").

But even if the Court had admitted the Pinterest image below, it would not have impacted the merits of United's then-pending motion because the image was not authenticated. *Van Alstyne v. GC Servs., LP*, 2009 WL 10695068, at *3 (S.D. Tex. Dec. 11, 2009) ("Documents supporting or opposing summary judgment must be properly authenticated so as to be admissible as evidence."). Screenshots from a

pseudonymous Pinterest account are not self-authenticating, *United Health Prod., Inc. v. Animal Health Int'l, Inc.*, 2021 WL 930682, at \*4 (S.D. Tex. Mar. 11, 2021) (screenshot was not properly authenticated), which further undermined Palova's belated motion.  And while Palova attempted to avoid this problem below by asking the Court to reopen discovery so she could authenticate the document.  ROA.7448, 7451, Palova does not argue on appeal that the district court erred in denying her request to propound new discovery.  Thus, the only relief she seeks on appeal amounts to a request to supplement the summary judgment record with an inadmissible screenshot.  The district court's failure to admit that inadmissible screenshot could not amount to an abuse of discretion.

## IV.    If the Court Concludes that the RLA Does Not Preempt Palova's Claims, It Should Remand for the District Court to Consider United's Alternative Grounds for Summary Judgment in the First Instance

As noted above, *supra* at 25, the district court found it lacked subject matter jurisdiction in this case and therefore did not address the alternative grounds for summary judgment that United presented below.  If this Court concludes that the RLA does not preempt Palova's claims, United respectfully requests that the Court remand the case to the district court so it may address United's other substantive arguments in the first instance.

To be sure, this Court may affirm summary judgment "on any ground supported by the record and presented to the district court."  *RJ Reynolds Tobacco*

*Co. v. FDA*, 96 F.4th 863, 887 (5th Cir. 2024). But appellate courts "generally will not reach the merits of an issue not considered by the district court." *Id.* (quotations omitted). The Court reviews the district court's summary judgment order for legal error, "not to decide facts or make legal conclusions in the first instance." *Id.* at 887 n.76 (*quoting Browning v. Kramer*, 931 F.2d 340, 345 (5th Cir. 1991)). And "absent special circumstances, a federal appellate court will not consider an issue passed over by a district court." *Man Roland, Inc. v. Kreitz Motor Exp., Inc.*, 438 F.3d 476, 483 (5th Cir. 2006); *see also W. Fire Ins. Co. v. Copeland*, 786 F.2d 649, 653 n.4 (5th Cir. 1986) ("the trial court, rather than the appellate court" should "evaluate in the first instance the nonmoving party's evidence on a motion for summary judgment").

Palova does not identify any special circumstances that warrant deviating from the established practice of remand for the lower court to address United's alternative grounds for summary judgment in the first instance. Thus, if the Court does not affirm based on RLA preemption, it should adhere to its "well-established general rule" of not reaching the merits on issues not considered by the district court below and ordering the case remanded. *See Magnolia Island Plantation, L.L.C. v. Whittington*, 29 F.4th 246, 252 (5th Cir. 2022).

## CONCLUSION

For the foregoing reasons, the judgment below should be affirmed.  But to the extent the Court concludes RLA preemption does not apply here, it should remand for the district court to consider United's alternative grounds for summary judgment in the first instance.

Respectfully submitted,

O'MELVENY & MYERS LLP

*/s/ Kristin C. Cope*
Kristin C. Cope
Texas State Bar No. 24074072
**O'Melveny & Myers**
kcope@omm.com
2801 North Harwood Street
Suite 1600
Dallas, Texas 75201
Telephone:  972-360-1900
Facsimile:  972-360-1901

REED SMITH LLP
R. Alan York
Federal ID No. 12568
Texas State Bar No. 22167500
ayork@reedsmith.com
1221 McKinney Street
Suite 2100
Houston, Texas 77010
713-469-3800
713-469-3899 (fax)

Brian K. Morris
Texas State Bar No. 24108707
bmorris@reedsmith.com
2850 N. Harwood Street
Suite 1500
Dallas, Texas 75201
469-680-4200
469-680-4299 (fax)

Michele Haydel Gehrke
California State Bar No. 215647
mgehrke@reedsmith.com
101 Second Street, Suite 1800
San Francisco, CA 94105-3659
415-659-4798
415-391-8269 (fax)

***Counsel for Defendant-Appellee,
United Airlines, Inc.***

# CERTIFICATE OF SERVICE

In accordance with the Federal Rules of Appellate Procedure, the undersigned certified that a true and correct copy of this document was served upon all counsel of record via the Court's ECF filing system on this 25th day of October 2024.

*/s/ Kristin C. Cope*
Kristin C. Cope

## CERTIFICATE OF COMPLIANCE

1.    Pursuant to Fed. R. App. P. 32(g) and 5th Cir. R. 32.3, the undersigned counsel certifies that this brief contains 9,079 words printed in a proportionally spaced typeface, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Times New Roman) in Microsoft Word.

*/s/ Kristin C. Cope*
Kristin C. Cope