No. 24-20136

## IN THE
## UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

---

Anna Palova,
Plaintiff - Appellant
v.
United Airlines, Inc.,
Defendant - Appellee

---

**On Appeal from**
United States District Court for the Southern District of Texas
4:21-CV-3451

---

**REPLY BRIEF OF APPELLANT ANNA PALOVA**

---

SUBMITTED BY:

Steven John Mitby
Mitby Pacholder Johnson PLLC
1001 McKinney Street, Suite 925
Houston, Texas 77002

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ II

TABLE OF AUTHORITIES ........................................................................................ III

STATEMENT OF ISSUES PRESENTED FOR REVIEW ................................................. 1

SUMMARY OF THE ARGUMENT ............................................................................... 2

LEGAL ARGUMENT ................................................................................................... 4

A.   Interpretation of "parking" will not resolve Ms. Palova's disparate treatment claim. ................................................................................................ 4

1.   United disregards *Carmona* and clear Supreme Court precedent........................ 4

2.   The relevant question is United's discriminatory animus, not whether Ms. Palova engaged in "parking." ......................................................................... 5

3.   United does not cite any controlling authority in support of its position........ 9

4.   United deceptively distorts Ms. Palova's testimony to manufacture false issues................................................................................................................. 12

5.   United disregards the statutory origin of the rights Ms. Palova seeks to enforce............................................................................................................... 13

B.   The District Court abused its discretion in rejecting dispositive evidence........ 14

C.   The effect of preemption need not be preserved, as there is no dispute here.. 15

CONCLUSION ......................................................................................................... 15

CERTIFICATE OF SERVICE ..................................................................................... 16

CERTIFICATE OF COMPLIANCE ............................................................................. 17

TABLE OF AUTHORITIES

## CASES

*Alexander v. Gardner-Denver Co.,*
    415 U.S. 36, 94 S. Ct. 1011, 39 L. Ed. 2d 147 (1974) …………………..…….14

*Anderson v. Am. Airlines, Inc.,*
    2 F.3d 590 (5th Cir. 1993)……………………………………………..…….…5

*Baker v. Farmers Elec. Co-op., Inc.,*
    34 F.3d 274 (5th Cir. 1994) ……………………………………………………9

*Ballew v. Cont'l Airlines, Inc.,*
    668 F.3d 777 (5th Cir. 2012) …………………………..…………………5

*Bhd. of Locomotive Engineers & Trainmen v. Union Pac. R.R. Co.,*
    31 F.4th 337 (5th Cir. 2022), cert. denied,
    143 S. Ct. 564, 214 L. Ed. 2d 335 (2023) …………………….………………5

*Blankenship v. Atchison, Topeka, & Santa Fe R. Co.,*
    140 F.3d 1037 (5th Cir. 1998) ……………………………….…………10-11

*CareFlite v. Off. & Pro. Emps. Int'l Union, AFL-CIO,*
    766 F. Supp. 2d 773 (N.D. Tex. 2011) ………………………..………………12

*Carmona v. Sw. Airlines Co.,*
    536 F.3d 344 (5th Cir. 2008) …………………………………………..2-5, 9,11-14

*Consol. Rail Corp. v. Ry. Lab. Executives' Ass'n,*
    491 U.S. 299, 109 S. Ct. 2477, 105 L. Ed. 2d 250 (1989) ……………………3-5

*Covalt v. Pintar,*
    No. CIV.A. H-07-1595, 2007 WL 7239321
    (S.D. Tex. June 29, 2007)… ……………………………….…………….........10

*Cox v. United Parcel Serv., Inc.,*
    No. CIV. A. 99-2045, 2000 WL 28176
    (E.D. La. Jan. 12, 2000) ………………..……………………………11

*Frost v. Harper,*
> No. CIV.A. C-01-069, 2001 WL 34063533
> (S.D. Tex. Mar. 23, 2001)...…… …………………….…………….…....11

*Gross v. FBL Fin. Servs., Inc.,*
> 557 U.S. 167, 129 S. Ct. 2343,
> 174 L. Ed. 2d 119 (2009) …………………….…………………..6

*Hawaiian Airlines, Inc. v. Norris,*
> 512 U.S. 246, 114 S. Ct. 2239, 129 L. Ed. 2d 203 (1994) …………...…….4, 11

*Korndoffer v. W. States Fire Prot. Co.,*
> No. CIV.A.SA-04-CA-0944-, 2004 WL 2750231
> (W.D. Tex. Dec. 2, 2004)… ………………………………...……10

*McCall v. McQueen,*
> 962 F. Supp. 890
> (E.D. La. 1997)………………………...……………………...……11

*Moreno v. STP Nuclear Operating Co.,*
> 172 F. Supp. 2d 857
> (S.D. Tex. 2001) ………………...……………………………...…10

*Patrick v. Ridge,*
> 394 F.3d 311 (5th Cir. 2004)……………………………...............6

*Reece v. Houston Lighting & Power Co.,*
> 79 F.3d 485 (5th Cir. 1996) …………………………………...3, 9-11

*Reeves v. Sanderson Plumbing Prod., Inc.,*
> 530 U.S. 133, 120 S. Ct. 2097,
> 147 L. Ed. 2d 105 (2000) …………………………….…………..6

*Sec. & Exch. Comm'n v. Jarkesy,*
144 S. Ct. 2117, 219 L. Ed. 2d 650 (2024) …………………………...…14

*Slocum v. Delaware, L. & W.R. Co.,*
> 339 U.S. 239, 70 S. Ct. 577,
> 94 L. Ed. 795 (1950) …………………………………….…………4

*Sw. Airlines Pilots Ass'n v. Sw. Airlines Co.,*
  No. 23-11065, 2024 WL 4588782 (5th Cir. Oct. 28, 2024)………..…………... 12

*Woodrow v. Inland Paperboard & Packaging, Inc.,*
  No. 1:05-CV-39, 2005 WL 6482749
  (E.D. Tex. July 21, 2005)……..… ……………………………………....………10

## **STATUTES**

29 U.S.C. § 185…………….....………………………………….………….....……3, 8 -11

29 U.S.C § 621…………..…....……………………………….………......5-6, 13-14

45 U.S.C. § 184…………..…....…………………………..….…………….....4, 8-14

## **RULES**

Tex. App. R. 33. 33.1(a)(1)(A)…....……………………..………….…..……....15

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1. Did the district court err when it determined that the Railway Labor Act preempted Appellant's federal and state law claims for age discrimination?

2. Did the district court's order violate Appellant's right to a jury trial?

3. Did the district court abuse its discretion in failing to consider direct and circumstantial evidence of Appellee's discriminatory intent?

## SUMMARY OF THE ARGUMENT

United's response fundamentally distorts what this case is about. This is a disparate treatment case in which United discriminated against Ms. Palova based on her age. United terminated Ms. Palova for the same alleged conduct that United ignored or excused in younger Houston-based flight attendants. Determining disparate treatment does not require interpretation of the Joint Collective Bargaining Agreement.

United does not use the words "disparate treatment" anywhere in its response or cite any disparate treatment cases that support its position. United pretends as if showing that Ms. Palova engaged in "parking" would provide a complete defense to her claims. It would not. Even if United could show that Ms. Palova "parked" trips, that would not excuse United for treating her differently from younger flight attendants because of her age. United's motive is the key fact issue.

That is why, in its proposed jury charge, United never asked for a jury question about "parking." If the meaning of "parking" were case-dispositive – or even important – United would have submitted a jury question on the issue. Given United's argument on appeal, that is a surprising omission – and one for which United provides no plausible explanation.

United also misreads – and attempts to confuse and dilute – the clear RLA preemption standard adopted by the Supreme Court and this Court. *Carmona* held that the "'distinguishing feature' of a minor dispute 'is that the dispute may be conclusively resolved by interpreting the existing [collective bargaining] agreement.'" *Carmona v. Sw.*

2

*Airlines Co.*, 536 F.3d 344, 348 (5th Cir. 2008) (quoting *Consolidated Rail Corp. v. Railway Labor Executives' Ass'n,* 491 U.S. 299, 305 (1989)).

United does not even try to satisfy that standard, even though the facts of *Carmona* are closely analogous to Ms. Palova's case. Instead, United disregards *Carmona* and relies almost exclusively on *Reece v. Houston Lighting & Power Co.*, 79 F.3d 485, 487-88 (5th Cir. 1996). United's reliance on *Reece* is mistaken. *Reece* involved a different statute (the LMRA), applied a somewhat different preemption standard, and was not a disparate treatment case. And Reece, unlike Ms. Palova, made a direct claim for training and promotion benefits under his CBA. While interpretation of the CBA was necessary to determine the benefits to which Reece was entitled, no similar interpretive question would help resolve Ms. Palova's disparate treatment claim.

United does not even acknowledge – much less attempt to address – these critical differences. For those reasons, *Carmona* – not *Reece* – controls, and *Carmona* requires reversal of the District Court's summary judgment.

<u>LEGAL ARGUMENT</u>

**A.    Interpretation of "parking" will not resolve Ms. Palova's disparate treatment claim.**

**1.    United disregards *Carmona* and clear Supreme Court precedent.**

United seeks to water down the standard for "minor dispute" preemption under the Railway Labor Act (RLA).  Contrary to what United argues, the "'distinguishing feature' of a minor dispute 'is that the dispute may be conclusively resolved by interpreting the existing [collective bargaining] agreement.'" *Carmona v. Sw. Airlines Co.*, 536 F.3d 344, 348 (5th Cir. 2008) (quoting *Consolidated Rail Corp. v. Railway Labor Executives' Ass'n*, 491 U.S. 299, 305 (1989)).  United cannot – and therefore never attempts to – meet that standard.  United effectively concedes that this case cannot be "conclusively resolved by interpreting" the Joint Collective Bargaining Agreement (JCBA).  *Id.* at 348.  That should end the inquiry.  Under *Carmona*, preemption does not apply.

United pretends as if the *Carmona* standard is an aberration when it clearly is not.  The language quoted in Carmona comes from *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 256, 114 S. Ct. 2239, 2245, 129 L. Ed. 2d 203 (1994) ("" The distinguishing feature of [a minor dispute] is that the dispute may be conclusively resolved by interpreting the existing [CBA]") (quoting *Consol. Rail Corp. v. Ry. Lab. Executives' Ass'n*, 491 U.S. 299, 305, 109 S. Ct. 2477, 2481, 105 L. Ed. 2d 250 (1989)).  The Supreme Court has made clear that "minor disputes are 'controversies

over the meaning of an existing collective bargaining agreement.'" *Id.* (quoting *Slocum v. Delaware L. & W.R. Co.*, 339 U.S. 239, 243, 70 S.Ct. 577, 579, 94 L.Ed. 795 (1950)).

The Fifth Circuit has quoted the same standard in the context of RLA preemption multiple times. *Bhd. of Locomotive Engineers & Trainmen v. Union Pac. R.R. Co.*, 31 F.4th 337, 342 (5th Cir. 2022), *cert. denied*, 143 S. Ct. 564, 214 L. Ed. 2d 335 (2023); *Ballew v. Cont'l Airlines, Inc.*, 668 F.3d 777, 783–84 (5th Cir. 2012); *Anderson v. Am. Airlines, Inc.*, 2 F.3d 590, 595 (5th Cir. 1993); *see also Consol. Rail Corp. v. Ry. Lab. Executives' Ass'n*, 491 U.S. 299, 305, 109 S. Ct. 2477, 2482, 105 L. Ed. 2d 250 (1989). There is no doubt that *Carmona's* standard for preemption applies here.

**2.    The relevant question is United's discriminatory animus, not whether Ms. Palova engaged in "parking."**

Even under the standard United seeks to apply, the definition of "parking" in the JCBA would not establish a complete defense.  United's entire response depends on the false premise that the "interpretation" of "parking" – if not part of Ms. Palova's claims – is at least relevant to its defense.  However, United's Response Brief identifies an "algorithm" specifically designed to identify instances of parking as its defense, not any contractual interpretation.  *See* Appellee's Response at 10. But Ms. Palova has alleged disparate treatment – that she was singled out and treated differently from younger co-workers.  The issue is United's motives rather than any right afforded by the JCBA.

The definition of parking does not answer the question of United's motives in terminating Ms. Palova.  *See Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009) ("[T]he ordinary meaning of the ADEA's requirement that an employer took adverse action 'because of' age is that age was the 'reason that the employer decided to act'"); *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 153 (2000) ("The ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination"); *Patrick v. Ridge*, 394 F.3d 311, 316 (5th Cir. 2004) (the "ultimate question" in ADEA cases is intentional discrimination).

Regardless of whether Ms. Palova "parked" trips, United singled her out – along with two other senior flight attendants in Houston – for investigation and termination. United does not dispute that dozens of Houston-based flight attendants allegedly engaged in "parking."  ROA. 4762:11-4763:18, 4764:23-4765:8, 4772:20-4473:1, 4782:22-25, 4785:16-4786:2.  Yet, United management gave a directive to "investigate" a "Top Ten" list and terminate only three of the most senior flight attendants because of discriminatory animus.  ROA. 4782:22-4786:2. That violates the ADEA even if United's allegations of "parking" were true.

United's response does not attempt to address the direct and circumstantial evidence of discriminatory intent.  United does not dispute the most salient facts from which the jury could infer disparate treatment:

- The United supervisor who signed Ms. Palova's termination letter posted a meme that ridiculed senior female flight attendants on social media. ROA.569-572, 7455-7456, 7464.

- United's internal spreadsheet that purported to "rank" flight attendants for investigation over parking used "seniority" as the first criteria – when "seniority" should have been irrelevant. ROA.4746:9-4749:18, 3476-3483, 4969:1-4970:13, 5143-5196.

- Ms. Palova had a perfect attendance and performance record over twenty-eight years and held leadership positions. ROA.551-552 [¶17-18], 3617:20-24, 3524:9-3525:9, 3685:14-3687:21.

- United did not follow its customary progressive discipline policy and terminated Ms. Palova for an alleged "first offense" that has no bearing on safety, reliability, or timeliness. ROA. 569-572, 778-780, 5108, 4867:12-4868:9.

- United has been far more lenient with flight attendants who engage in drug and alcohol abuse or commit sexual or other forms of harassment and assault. ROA.4933:23-4938:25, 4959:10-4960:2.

- The investigative process was a sham. United provided Ms. Palova with a spreadsheet detailing her trip trades in small print one hour before her interview and expected her to respond to questions about those trades. In

doing so, United violated its own policy to provide data 72 hours in advance. ROA.554 [¶31], 4812:1-4813:4, 4813:23-4816:22, 4818:13-4824:25, ROA.3774:25-3775:5.

- United had begun drafting Ms. Palova's termination letter before she had an opportunity to provide all responsive information. ROA.5085-5086, 4700-4701.

- United witnesses gave conflicting testimony about who initiated the investigation and what criteria was used. ROA.4733:14-22, 4954:17-4956:7.

- The COVID-19 pandemic was emerging at the time United terminated Ms. Palova and the airline announced early retirement incentives for flight attendants less than one month later. ROA.5215.

- United focused on senior flight attendants based in Houston even though complaints about parking related to younger flight attendants in San Francisco. ROA. 4969:1-4970:13, 2785:14-25.

That evidence was sufficient to demonstrate a fact question regarding United's discriminatory animus. Under that standard, even if United could establish "parking," the District Court would have to determine whether United discriminated against Ms. Palova based on her age – which is why United never asked for a jury question about the definition of "parking." In fact, the proposed instructions direct just the opposite, stating that "parking" is *referred* to in the JCBA and that the jury should not attempt to

interpret the term. RAO.7714. The JCBA has, at most, tangential relevance to the disparate treatment issues presented by this case.

### 3.     United does not cite any controlling authority in support of its position.

Ignoring both RLA preemption and disparate treatment law, United focuses on Labor Management Relations Act (LMRA) preemption. The LMRA is a different statute with a somewhat different standard for preemption. *See* 29 U.S.C.A. § 185 ("Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties"); *Baker v. Farmers Elec. Coop., Inc.,* 34 F.3d 274, 279 (5th Cir.1994) (LMRA preempts state law claims that are "inextricably intertwined with consideration of the terms of the labor contract").

For LMRA preemption, it is not necessary that the CBA "conclusively resolv[e]" the dispute. *Carmona,* 536 F.3d at 348. Significantly, United largely disregards the RLA preemption case law from the Fifth Circuit, which is the only issue here.

United bases much of its argument on *Reece v. Houston Lighting & Power Co.,* 79 F.3d 485, 487-88 (5th Cir. 1996), an LMRA case that *Carmona* distinguished. *Reece* was not a disparate treatment case. Rather, Reece sought to enforce contractual rights to training and promotion under a CBA. *Reece,* 79 F.3d at 487 ("Reece's discrimination claim turns on questions of promotion, seniority, and assignment to training programs,

all of which are provided for in the CBA."). The entire basis of Reece's claim was that

he had been deprived of rights provided by the CBA. *Reece*, 79 F.3d at 487. That is not

even remotely true for Ms. Palova, who claims age-motivated disparate treatment from

specific, similarly situated flight attendants.

Because of the absence of Supreme Court or Fifth Circuit authority to support

its position, United relies heavily on district court decisions under the LMRA. But those

cases are not disparate treatment cases and most involved claims for rights or benefits

under a CBA. *See Covalt v. Pintar*, No. CIV.A. H-07-1595, 2007 WL 7239321, at *3 (S.D.

Tex. June 29, 2007) (plaintiff's hostile work environment claims "arise from the 'failure

to discipline, which is clearly governed by provisions in the CBA'"); *Korndoffer v. W.*

*States Fire Prot. Co.*, No. CIV.A.SA-04-CA-0944-, 2004 WL 2750231, at *5 (W.D. Tex.

Dec. 2, 2004) (court was "required to interpret" CBA "to determine if plaintiff, as local

employee, was "properly selected for lay off" under the CBA); *Blankenship v. Atchison,*

*Topeka, & Santa Fe R. Co.*, 140 F.3d 1037 (5th Cir. 1998) (intentional infliction of

emotional distress claim based on drug testing preempted because "questions of

whether the drug testing and dismissal were proper can only be answered by

consultation with and interpretation of the CBA"); *Woodrow v. Inland Paperboard &*

*Packaging, Inc.*, No. 1:05-CV-39, 2005 WL 6482749, at *3 (E.D. Tex. July 21, 2005)

(LMRA provides "grounds for complete preemption whenever a party's claim depends

upon the meaning of a collective bargaining agreement"); *Moreno v. STP Nuclear Operating*

*Co.*, 172 F. Supp. 2d 857, 859 (S.D. Tex. 2001) (dispute over temporary promotion

governed by CBA preempted by LMRA); *Frost v. Harper*, No. CIV.A. C-01-069, 2001 WL 34063533, at *4-5 (S.D. Tex. Mar. 23, 2001) (plaintiff's complaints about CBA grievance procedure and arbitration process preempted by LMRA); *Cox v. United Parcel Serv., Inc.*, No. CIV. A. 99-2045, 2000 WL 28176, at *3 (E.D. La. Jan. 12, 2000) (RLA preemption applied because some of plaintiff's claims concerned CBA rights and procedures); *McCall v. McQueen*, 962 F. Supp. 890, 893 (E.D. La. 1997) (claims related to "seniority, transfers, and assignments" governed by CBA were preempted under RLA).

Straining to make *Reece* relevant, United cites one sentence from one case for the proposition that preemption under the RLA and the LMRA are the same. *Blankenship v. Atchison, Topeka, & Santa Fe R. Co.*, 140 F.3d 1037 (5th Cir. 1998). That opinion was unpublished and, because it was issued in 1998, does not have precedential value. Fifth Cir. R. 47.5.4. The sentence in *Blankenship* was based on language in *Hawaiian Airlines*, which stated, in relevant part, that a "state-law cause of action is not pre-empted if it involves rights and obligations that exist independent of the CBA." *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 246–47, 114 S. Ct. 2239, 2241, 129 L. Ed. 2d 203 (1994). Of course, Ms. Palova's right to be free from age-related discrimination exists independent of the JCBA.

Even more fundamentally, United's interpretation of *Reece* would distort the clear teaching of *Carmona*. Under United's muddy standard, all that is necessary for preemption is for the defendant to allege that the CBA provides a non-discriminatory

reason for its actions. That is not the law. This Circuit recently noted the distinction between union-related retaliation claims and claims asserted under Title VII: "Although the Union, like the plaintiff in *Carmona*, alleges that the carrier's discriminatory motive spurred retaliatory action, *Carmona* dealt with claims arising under Title VII and the Americans with Disabilities Act." *Sw. Airlines Pilots Ass'n v. Sw. Airlines Co.,* No. 23-11065, 2024 WL 4588782, at *7 (5th Cir. Oct. 28, 2024). The *CareFlite* district court case that United cites is another example of the differences in analyses presented in claims asserted on behalf of a union versus an individual's claim. *CareFlite v. Off. & Pro. Emps. Int'l Union, AFL-CIO,* 766 F. Supp. 2d 773 (N.D. Tex. 2011). United conflates these two distinct applications of the law throughout its response.

### 4.     United deceptively distorts Ms. Palova's testimony to manufacture false issues.

United ignores the distinction *Carmona* made between plaintiffs who claim that "CBA procedures were *applied* in a discriminatory manner" and plaintiffs who contend that "CBA procedures were fundamentally discriminatory." *Carmona*, 536 F.3d at 349–50 (emphasis original). This Court recognized that the former category of cases is not preempted. *Id.* ("consideration of the CBA *as applied to Title VII and the ADA*—not interpretation of the CBA itself—is what is required") (emphasis original).

Here, Ms. Palova has not challenged any part of the JCBA as fundamentally discriminatory. Rather, she argues that United applied its rules against "parking" in a

discriminatory manner to her as opposed to other younger flight attendants who were similarly accused.

United baldly misrepresents Ms. Palova's deposition testimony regarding what United believes parking to be. Ms. Palova agreed that the hypothetical presented to her was parking, but United edited her testimony to omit that portion of her response:

> Q. So if you bid for a trip-
> A. Uh-huh.
> Q. –and you then placed, just as an example, that trip that you bid for and won and was on your – on your schedule, on your line, and then you placed it on someone else's line without letting them know, would that have been parking also?
> **A. I think so….**

*See* Appellee's Response at 12 (emphasis added); ROA.1119. But defining all the possible scenarios constituting parking is irrelevant to United singling her out in favor of younger flight attendants who also committed parking. *See* Appellee's Brief at 11; ROA.4785:16-4786:2. This is enough to exclude her case from RLA preemption.

### 5.     United disregards the statutory origin of the rights Ms. Palova seeks to enforce.

*Carmona* also distinguished claims based on the CBA from claims that have a statutory origin, recognizing that "claims grounded in federal statutory rights are generally not precluded by the RLA." *Carmona*, 536 F.3d at 350. Ms. Palova's claims under the ADEA are clearly based in statute, not contract. To avoid preemption, the JCBA need not "be irrelevant to the dispute," as "either party may still use the CBA to support the credibility of its claims." *Carmona*, 536 F.3d at 349.

United also failed to show that the ADEA's right to jury trial should yield to RLA minor dispute preemption.  Once again, United attempts to rely on a district court case and ignores Supreme Court and appellate authority – like *Carmona* – that rejects its position.  *See, e.g., Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47 (1974).  United certainly did not provide the level of analysis required by *Jarkesy* to curtail Ms. Palova's right to a jury trial.  *SEC v. Jarkesy*, 144 S. Ct. 2117, 2120 (2024) ("The right to trial by jury is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right has always been and 'should be scrutinized with the utmost care'") (internal quotations and citations omitted).

Under the ADEA, it is clear that – even if Ms. Palova engaged in "parking" – United was not free to discriminate against her based on her age while giving better treatment to younger flight attendants who committed the same misconduct.  United offers no rejoinder to that important point.

**B.    The District Court abused its discretion in rejecting dispositive evidence.**

The manager who fired Ms. Palova posted a meme making fun of senior flight attendants.  United misstates the procedural posture of the case to claim Ms. Palova's submission was too late, claiming discovery was closed long before the meme was presented.  But the District Court was still resolving discovery disputes and ordered United to present its corporate representatives for deposition during the month before trial.  ROA.7962:1-7963:20, 7933:15-22.  That deposition took place the same day that the District Court issued its ruling, meaning Ms. Palova was deprived of the opportunity

to share United's testimony with the Court or jury.  ROA.7875 (indicating deposition date of March 5, 2024).  The District Court should have considered that evidence.

**C.    The effect of preemption need not be preserved, as there is no dispute here.**

United claims that Ms. Palova waived her right to present her position regarding how preemption would deprive her of her right to a jury trial.  There is no dispute that RLA preemption has this effect as her claim would then be resolved by the Systems Board.  Because there is no ruling required on this issue, Ms. Palova was not required to preserve this point. Tex. App. R. 33.1(a)(1)(A).

CONCLUSION

For the foregoing reasons, this Court should reverse and remand.

Submitted By:

MITBY PACHOLDER JOHNSON PLLC

*/s/ Steven J. Mitby*
Steven J. Mitby
Texas State Bar No. 24037123
Email: smitby@mitbylaw.com
Debbie S. Pacholder
Texas Bar No. 00784969
Email: dpacholder@mitbylaw.com
The Hon. Henry Saad
Email: hsaad@mitbylaw.com
1001 McKinney Street, Suite 925
Houston, Texas, 77002
(713) 234-1446

*Attorney for Plaintiff-Appellant*

**CERTIFICATE OF SERVICE**

I certify that on November 15, 2024, the foregoing document was served, via the Court's CM/ECF Document Filing System, upon the following registered CM/ECF users:

Kristin Cope: kcope@omm.com
Michele Haydel Gehrke: mgehrke@reedsmith.com
Emily Paige Harbison: eharbison@reedsmith.com
Brian K. Morris: bmorris@reedsmith.com
Stephen John Roppolo: sroppolo@fisherphillips.com
James Mark Tucker: james.tucker@eeoc.gov
Robert Alan York: ayork@reedsmith.com

*/S/ Steven J. Mitby*
Steven J. Mitby

## CERTIFICATE OF COMPLIANCE

1.  This document complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f) and 5th CIR. R. 32.1: this document contains 3,234 words.

2.  This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5), and 5th CIR. R. 32.1 and the type-style requirements of FED. R. APP. P. 32(a)(6) because: this document has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 using 14-point or larger font, Garamond typeface for all text.

*/s/ Steven J. Mitby*
Steven J. Mitby
Attorney for Plaintiff-Appellant
Dated: November 15, 2024